[No. D019654. Fourth Dist., Div. One. Jan. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY JOHN STRUNK, Defendant and Appellant.

**COUNSEL**

J. Michael Crofts, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzales and Joyce N. Burnett, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—A jury convicted Gregory John Strunk of possessing a sharp instrument while lawfully confined in a state prison. (Pen. Code,[1] § 4502.) In a bifurcated court proceeding, Strunk also admitted the truth of a prior prison term enhancement allegation. (§ 667.5, subd. (b).) The trial court sentenced him to a total five-year consecutive term.

Strunk appeals, contending the trial court committed prejudicial error by failing to sua sponte instruct the jury on the lesser included offense of attempt, by instructing the jury under CALJIC No. 2.90 on the reasonable doubt standard, and by imposing a sentence in violation of the California Rules of Court[2] and therefore in excess of its jurisdiction. We affirm Strunk's conviction, but remand for resentencing.

### FACTS

On Wednesday, February 24, 1993, Strunk was an inmate at the R. J. Donovan Correctional Facility in San Diego County. On that date, Correctional Officer Carl A. Berner was assigned to the "Facility 2 Education Compound" as a roving guard to oversee the security and safety of instructors and inmates in the compound's six classrooms. Two shifts of vocational welding were taught in one of the classrooms. The "A" shift used the classroom each week from 7:30 or 8 a.m. on Sunday until 11 a.m. on Wednesday. Strunk was enrolled in the "B" shift, which used the welding classroom each week from 12:30 or 1 p.m. on Wednesday afternoon and all day Thursday, Friday and Saturday. Between the end of shift "A" and the start of shift "B" only the instructor was present in the welding classroom.

Close to 1 p.m. on the date in question, Berner stopped outside the welding classroom, peered through one of its expanded metal gates and saw an inmate named Donald Dillon standing near one of the tables used for metal work. He was facing the instructor, Joe Hall, who was about 15 feet away issuing supplies to other inmates. About six feet behind Dillon, Berner saw Strunk, who was wearing protective goggles and welding gloves, working at a grinding bench by the wall with his back to him. He noticed a shower of sparks going up in the air and heard a high-pitched sound, similar to someone grinding a thin piece of metal. Based on his prison guard experience, Berner concluded Dillon was acting as a lookout for Strunk.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] All rule references are to the California Rules of Court.

As Berner opened the classroom gate, he saw Dillon notice him and bend down quickly. Berner immediately headed toward Strunk. As he moved closer to Strunk, Berner heard the grinding stop and saw the sparks disappear. He observed Strunk moving his arms as if he were removing something from the "vice [*sic*]." He then saw Strunk walk around the end of the grinding bench, behind the grinder's protective transparent shield, and bend down next to a welding machine by the wall. At that same time Berner heard the sound of metal hitting the concrete floor near where Strunk was kneeling down.

As Berner walked directly toward the noise, Strunk walked past him. Berner pulled out his flashlight, got on his hands and knees and looked underneath the welding machine, where he found a flat piece of metal. He reached under the machine, pulled out the metal piece, which was "too hot to hold on to for very long," and placed it in his left front pocket. Recognizing the metal to be "an inmate-manufactured weapon or a shank[,]"[3] Berner immediately questioned and searched Strunk. Because the metal was "too hot to keep close to [his] body" for more than about 10 seconds, Berner handed the metal shank to the instructor who had walked towards him. The instructor set the metal weapon down on a nearby bin to cool. Berner then returned it to his pocket and escorted Strunk to the "Facility 2 Program Office." Strunk was later transferred to administrative segregation (Ad-seg).

While in Ad-seg, correctional officers intercepted two notes Strunk had written for delivery to Dillon, which in effect told Dillon to keep quiet or say he did not have any knowledge of a weapon, he was waiting to use the extension cord for an electric saw and he was looking at the instructor because there were a lot of sparks and he was not wearing goggles.[4] Strunk was subsequently charged in this criminal action and proceeded to jury trial.

---

[3]The shank was one-eighth-inch thick and its point or edge had been made by a grinder. The metal from which it was made heats up immediately when in the process of being ground and cools down in about one and a half to two minutes. Such a weapon could be made with the grinder by almost anyone in about three minutes. None of the inmates had permission to make such an item because its only purpose would be to hurt someone.

[4]Although Strunk originally objected to the admission of the notes into evidence, he later testified he had written them both. The first note stated: " 'Dillon: What's up, bro? I haven't said nothing to the cops. Not a word. I hope you didn't either[.]' . . . We'll beat this if you don't say anything, bro. We don't know nothing. That must have been left behind from the last shift. [¶] I was grinding a V-groove plate and you were cutting the bricks for your booth. We don't know nothing. Go to the yard the first time you can. Don't get the 115 hearing until after the D.A. rejects the case or else they'll hear our 115, then use the 115 hearing and try to make a case with the D.A. [¶] I don't even know why you are in here, bro. You should get out soon and beat this shit. Hope I can, too. Maybe we'll get the same yard time. If not, I'll keep in touch. Take it easy bro. Greg [Strunk].' "

The second note, found folded and hidden in a package of coffee with directions to give to Dillon, stated: " 'What's up, bro? Only went to the store for $10 and I'm going to be here for

In addition to the various correctional officers who testified about the above facts, the instructor in the welding class at the time of the incident also testified, confirming Strunk was the only inmate who was using a grinder before Berner found the shank. He stated the sharp metal object could not have been left under the welding machine by someone from the earlier shift because it was too hot when found.

Berner, who was recalled twice, testified that although Dillon was aware of his presence in the welding classroom, Strunk was not. Strunk, who testified in his own defense, admitted he did not know Berner was there until after he turned around and walked past him to use an electric saw. He denied he made the knife found by Berner, claiming he was only working on his assigned project and that he had seen two inmates working earlier that day by the welding machine under which it was found. He asserted the welding machine heated up everything in its vicinity when it was in use. He further explained he wrote the notes to Dillon to clue him in about the "politics" of the matter, telling him that their stories should coincide and not bring attention to prison gangs as they had been threatened.

Dillon testified in Strunk's defense,[5] denying he acted as a lookout the day of the incident or that he had seen Berner enter the classroom. Although he had not received the notes written by Strunk and denied talking with Strunk since the incident, his testimony tracked the information stated in the notes.

Both Dillon's and Strunk's credibility was challenged through rebuttal and the fact of their prior convictions. The parties stipulated Strunk was lawfully confined in a state prison at the time of the incident.

---

at least another month. Did what I could for you. If you're still here next draw, I'll tighten you up. Hopefully you will be gone, aye?[!] [¶ Hey, I have a D.A. referral, and I guess you don't. So if they find you guilty on your 115, they're going [to] use it against me on my referral. So try to put it off until the D.A. rejects my case. Okay? Should only be about two more weeks. I'll let you know. [¶ And watch what you say to the I.E. Don't say anything to him[!] Say you don't have any knowledge of a weapon. And the only reason you were standing by me was to use the extension cord for the saw. . . . Why you were looking at the instructor while I was grinding is because there was a lot of sparks and you have no glasses. That's all[.] [¶ If the D.A. picks up my case, I'll use you as a witness. Use this story. Okay? Well, bro, I'm out of here. I'll get at you later, bro. Anonymous note. They already caught one of my kites to you just like this. Gave it to the sergeant. Yikes.' "

The notes were read to the jury and Berner explained the terms "115 hearing," "I.E." and "kite.

[5]Although the permanent vocational welding instructor also testified in Strunk's defense and in surrebuttal, he was on disability leave at the time of the incident in question and could not offer facts relevant to the specific events at issue.

DISCUSSION

I

*Jury Instructions*

Strunk claims the trial court committed prejudicial instructional error by failing to give the jury the lesser included offense of attempt instruction and by giving CALJIC No. 2.90. ██ The general rule is that in a criminal case the trial court must instruct on the "principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.]" (*People* v. *Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130].) Further, " '[i]t is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference. [Citation.]' [Citation.]" (*Ibid.*) With these preliminary rules in mind, we address Strunk's instructional error contentions.

██ First, we summarily dispose of his argument that the trial court instructing the jury under CALJIC No. 2.90 was reversible constitutional error. Since the filing of his opening brief, the United States Supreme Court has determined that instruction defining reasonable doubt in California is constitutional. (*Victor* v. *Nebraska* (1994) 511 U.S. ___ [127 L.Ed.2d 583, 590-599, 114 S.Ct. 1239, 1242-1250].)

██ Turning to his other instructional claim, we note that although it has long been the rule that a trial court must instruct on any necessarily included offenses or attempts (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311]), such must only be done when there is evidence sufficient to support a conviction on such as opposed to the charged offense, i.e, evidence deserving of consideration that such was lesser than or an attempt of that charged. (*Id.* at pp. 324-325; see also *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1232 [249 Cal.Rptr. 71, 756 P.2d 795]; *People* v. *Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893].) ██ While the same sua sponte jury instruction rule generally applies to attempts as well as to lesser included offenses (see, e.g., § 1159), an attempt is a specific intent crime and does not fit within the definition of a necessarily included offense of a general intent crime.

In this case, Strunk was charged with violating former section 4502, which provided in pertinent part: "Every person confined in a state prison or

who, . . . while under the custody of prison officials, officers or employees, possesses or carries upon his person or has under his custody or control any . . . sharp instrument, . . . is guilty of a felony . . . ."[6] To show a violation of this statute, the prosecution must prove the defendant was confined in a state prison and that he had knowledge of the prohibited object in his possession. (*People* v. *Reynolds* (1988) 205 Cal.App.3d 776, 779 [252 Cal.Rptr. 637].) While the knowledge requirement is consistent with general intent instructions, some specific instruction concerning knowledge of actual or constructive possession must also be given. (*Id.* at pp. 780-782.) Such requirement, however, does not make it a specific intent crime.

Here, the court instructed the jury on the elements of section 4502, including the requirement of "knowing" possession. It also reiterated the stipulation by the parties that the state prison confinement element was satisfied. The evidence before the jury revealed Strunk was the only inmate grinding at the time of the incident and the only one close to where the sharp, hot instrument[7] was found by the prison guard. Because Strunk was wearing special gloves to handle whatever hot piece of metal he was grinding and no other metal piece was found in the area in which he was working, it was only reasonable the jury determined he made the "weapon," carried it in his possession to the welding machine area and placed it under that machine, making the noise that attracted the prison guard to the area. Strunk's "knowledge" he was carrying a prohibited object could easily be inferred from his conduct in hiding the hot object under the welding machine when he was not aware of the prison guard's presence in the classroom. There was no issue at trial that the shank was not a weapon or that somehow Strunk had been unsuccessful in his efforts to either manufacture or possess it. His defense was mistaken identity of the person who made the weapon. Strunk claimed to have had nothing to do with either the preparation or possession of the weapon in this case. The clear state of the evidence, however, was that the shank was in fact a weapon possessed by its maker. The only question for the jury to decide was whether Strunk was the perpetrator. Thus, there was no evidence before the trial court to support an attempt instruction.[8]

---

[6]Section 4502 has recently been amended to restate the crime charged here as section 4502, subdivision (a). (Stats. 1993, ch. 554, § 1.) Subdivision (b) of that section defines a new crime of manufacturing or attempting to manufacture "any instrument or weapon" in state prison.

[7]Everyone who testified at trial, including Strunk, identified the metal object as a weapon.

[8]Strunk's appellate argument that the addition of a subdivision (b) to section 4502 for the manufacture and attempted manufacture of weapons evidences a legislative intent to make such a lesser included offense of possession under subdivision (a), or an attempt to possess, is totally illogical. Even if such were correct, which we do not so find, only a misreading of the record would support Strunk's argument he was somehow attempting to possess a weapon

## II

### *Sentencing*

At sentencing, the prosecutor argued the probation report's list of aggravating factors should also reflect Strunk's perjury at trial because he testified in defense the weapon found by the guard in the classroom on the pertinent day was made and left by other inmates. The prosecutor argued the aggravating factors thus outweighed the mitigating factors, of which there were none listed in the probation report, and that an upper four-year term should be imposed for the current conviction.

Thereafter, the court indicated it had read and considered the probation report and denied probation because Strunk was presumptively ineligible for such as he had suffered two or more felony convictions, was an active participant in the crime (rule 414(a)), and there were no unusual circumstances present.

The court then imposed sentence as follows: "Court will set the upper term of four years. Court has chosen the upper term of four years by the fact he popped—circumstances of aggravation outweigh the mitigating factors as determined by the probation officer. There are no mitigating factors; [¶] [Rule] 421(b)(2), defendant's prior record of convictions is increasing in numbers. His criminal conduct dates back to juvenile times, to 1983; [¶] Under rule 421(b)(5), previous grants of probation have been unsatisfactory, and he has reoffended and, subsequently, has felony convictions which [have] led to his state prison commit[ment]. [¶] Therefore, the court has chosen the upper term, four years, based on those aggravating factors. [¶] Court will enhance by one year consecutive pursuant to [section] 667.5(b). [¶] Total five years state prison. He has no credits. Five years full strength consecutive to present commit[ment]."

█ Strunk contends the sentence imposed was in excess of the trial court's jurisdiction because it violated the California Rules of Court in two respects: 1) It failed to consider the mitigating factors contained in the record; and 2) it erroneously used the same facts to both enhance and set the

---

rather than having control over that weapon. Contrary to his arguments on appeal, Strunk admitted at trial the metal object found in the classroom was a weapon and that he did not know the prison guard was in the classroom before that weapon was found. In addition to this evidence, the jury had before it the physical identified "weapon" and testimony about the time constraints concerning its making. The jury was properly instructed about the elements of the crime charged and Strunk has not challeged the sufficiency of the evidence to support the conviction. We do not reweigh the evidence as Strunk would have us to try to fit his charged crime into a newly created crime.

upper term. Strunk specifically claims the sentencing record affirmatively reveals the trial judge failed to consider all relevant sentencing criteria, not only contained in the probation report, but also in the record. (Rules 409, 420(b).) He argues the record reflects the judge only considered those factors listed by the probation report. Since the report noted no mitigating factors, the court could not have considered the factors the crime involved no harm or threat against any victim (rule 423(a)(6)), the undue influence of prison gangs (rule 423(a)(5)), that he participated in the crime under circumstances of coercion or duress (rule 423(a)(4)), and that he was "well spoken and intelligent" and his energies needed to be redirected "before he becomes deeply imbedded in prison life and culture" (rule 408(a)). Relying on *People* v. *Simpson* (1979) 90 Cal.App.3d 919, 926 [154 Cal.Rptr. 249], Strunk contends the matter must be remanded so that the sentencing court may consider mitigating factors supported by the record even though they were not noted by the probation report.[9]

Relying on the fact "[t]he record shows that the trial court was present and reviewed all the evidence admitted at trial[,]" the Attorney General responds that Strunk has waived any sentencing error, and if not, he has failed to overcome the presumption that in the face of this silent record the sentencing judge is presumed to have properly considered and rejected any circumstances in mitigation.[10] Also, he has failed to show improper dual use of facts occurred when the court imposed the upper and enhanced terms. We need not reach this last issue as we remand on the first.

Although no defense objection was made to the sentencing court's findings and balancing of mitigating and aggravating factors, the issue is not waived in this case[11] and, contrary to the Attorney General's assumption, the

---

[9]The last claimed mitigating circumstance, however, was noted in the probation report.

[10]The Attorney General's stated position is that because the court was present at trial it was "necessarily [] able to conclude that no one had been threatened or hurt during the commission of the offense because no evidence was admitted to that effect. The court also listened to [Strunk's] testimony pertaining to the presence and effect of the alleged prison gang violence on the commission of the offense. . . . Thus, the trial court had no duty to indicate on the record at the time of sentencing that it had considered but rejected the mitigating factors about which [Strunk] now complains."

The Attorney General distinguishes *People* v. *Simpson, supra,* 90 Cal.App.3d 919 as a plea bargain case with the omitted mitigating circumstance being found in the probation report and not in the trial record as contended here. As noted above, one of the factors not considered by the sentencing judge was contained in the probation report.

[11]The new sentencing waiver rule announced in *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040] only has prospective application.

sentencing judge was not the same judge who sat through the trial in this case.[12]

Although there may be certain cases and circumstances where sentencing by other than the trial judge will not interfere with the defendant's right to a fair and full sentencing hearing based on the record in the case, the probation report, and other statements or evidence submitted for the sentencing hearing, this is not one of them. Here the sentencing judge exercised his sentencing discretion based solely on the probation officer's report with respect to the conclusion there were no mitigating factors. Because the judge had not sat through the trial, and only reviewed the probation report which did not list at least three of the mitigating factors claimed by Strunk in the trial record, we cannot find that the judge exercised its required independent sentencing discretion or properly weighed all the circumstances. The matter must thus be remanded for a new sentencing hearing.

Moreover, because the trial judge is the only person who is in the position to properly review and weigh the claimed mitigating circumstances in this case, which are so dependent upon the facts adduced at trial, the matter must be remanded to him. Although we are sympathetic to a trial court's desire to set up procedures to help expedite the processing of criminal cases through its system, we do not approve of an administrative practice, such as that in place in the South Bay division of the San Diego Superior Court, which directs all sentencing matters to be handled by one judge, in this case Judge Jesus Rodriguez, regardless of whether the trial judge is still actively exercising judicial power. (See *People* v. *Jackson* (1987) 193 Cal.App.3d 393, 403 [238 Cal.Rptr. 327].) Such blanket procedure, without an explicit agreement by the defendant or some showing of good cause, denies a defendant his or her right to an independent, full and fair sentencing hearing as contemplated under the Determinate Sentencing Act (see § 1170) and the California Rules of Court.[13]

---

[12]The appellate record is silent as to the reason sentencing in this case was transferred from the trial judge (Judge Edwards) to the supervising judge (Judge Rodriguez). However, we can take judicial notice that the trial judge is still an active judge of the San Diego Superior Court and is assigned to the South Bay Division. We are also aware from handling numerous cases from that division of the superior court that sentencings are routinely transferred from the trial judge to Judge Rodriguez as part of a unique administrative procedure in the South Bay Court. Apparently, the procedure is designed to keep all sentencing discretion with Judge Rodriguez to facilitate the court's settlement practices.

[13]Although this matter is readily distinguishable from *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171] because a plea agreement is not involved, its principles concerning "internal administrative practices" not being able to override the implied natural course of proceedings that are expected by the defendant to that agreement, e.g., that the judge who takes the plea will also sentence the defendant, should

## DISPOSITION

Strunk's conviction and the court's true finding he had suffered a prior prison term are affirmed. The matter is remanded to the superior court for resentencing before Judge Raymond Edwards.

Work, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied January 20, 1995.

---

likewise apply. Absent some agreement by the defendant or the unavailability of the trial judge for other than internal administrative problems or convenience of the court, or some other good cause shown, a defendant should be able to have the trial judge who was familiar with the evidence at the trial impose sentence. (See also *People* v. *Jackson, supra,* 193 Cal.App.3d at pp. 402-403.)