Filed 12/12/14  P. v. Quintero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID STEPHEN QUINTERO,<br><br>    Defendant and Appellant. | H039290<br>(San Benito County<br>Super. Ct. No. CR-11-01277) |

Following a jury trial, David Stephen Quintero was found guilty of assault with force likely to produce great bodily injury (former Pen. Code,[1] § 245, subd. (a)(1)) (a lesser offense to count 5), making criminal threats (§ 422) (count 10), and disobeying a court order (§ 166, subd. (a)(4)) (count 14).[2]  The jury found true that, in committing the violation of section 245, subdivision (a)(1), and in committing the violation of section 422, defendant personally inflicted great bodily injury upon the victim (§ 12022.7).  The trial court found two prior prison term allegations (§ 667.5, subd. (b)) to be true.  Defendant was sentenced to a total term of nine years, eight months.

On appeal, defendant Quintero asserts that he was denied a fair trial as the result of prosecutorial misconduct and erroneous admission of his booking photograph.  He argues that this case must be remanded for resentencing because the San Benito County Superior

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     Defendant was originally charged with 16 counts, including two counts of forcible rape and two counts of forcible oral copulation.  Before jury deliberations, five counts (counts 4, 6, 7, 13, & 16) were dismissed.  The jury found defendant not guilty of count 5 (torture) and eight other counts, including the remaining three sexual offense charges.

Court denied his request for a continuance to be sentenced by the trial judge. He further contends that, if we find the request for sentencing by the trial judge was forfeited because defense counsel failed to file a timely motion for a continuance, he received ineffective assistance of counsel.

We find no reversible error and, accordingly, we will affirm.

I

*Evidence*

Jaime Sequeira and defendant had been in a sexually intimate relationship from about the end of November 2009 until May 2010. On October 15, 2010, Sequeira obtained a restraining order against defendant. Within weeks of the issuance of the order, defendant violated it by going to Sequeira's workplace and he was arrested. Despite the order, Sequeira continued to go to defendant's house approximately once a week and occasionally they had sex. Between May 2010 and July 21, 2011, Sequeira and defendant occasionally smoked methamphetamine or marijuana together.

According to Sequeira, defendant telephoned her a few times on the evening of July 21, 2011, he sounded really upset, and he asked her to come over to his house. Defendant threatened to hurt Sequeira's father if she did not come. Sequeira drove over to defendant's house at about 11:30 p.m.

The defendant's home and his father's home are next to each other on the same property. Joseph Morgan also lives on the same property, described as a ranch, in a residence close to defendant's home.

At some point, defendant invited Sequeira into his bedroom. Defendant grabbed her by her hair, head-butted her in the forehead, and punched her in the head. Defendant asked her how it felt to know that it was going to be her "last night" and "[h]e was the last person that [she] was going to see." Shortly after defendant began hitting and punching her while they were in defendant's bedroom, defendant pointed to a supposed surveillance camera in his bedroom and told her that people were watching and she

would not make it off the property if she tried to leave. She testified to being afraid and feeling that she could not leave. Defendant kept hitting her and knocking her to the floor. Using a belt, defendant struck her with a belt buckle on her back multiple times. He pinned her on the bed and bit her on her wrist and head.

During the hours that Sequeira was at defendant's house, they had sexual intercourse and Sequeira orally copulated defendant. At some point, defendant used a syringe to inject Sequeira.[3] When defendant seemed to be calming down and he was looking at a photo album, Sequeira asked defendant whether he was hungry and then made him something to eat. They had sex again.

Shortly before noon on July 22, 2011, Sequeira was able to leave defendant's house and she drove home. Sequeira's stepmother saw that Sequeira was injured; Sequeira could hardly stand, her eye was black and blue, and the entire side of her face was swollen. The stepmother telephoned the sheriff's office and a deputy responded to the house. Sequeira went to the sheriff's office and agreed to a SART (Sexual Assault Response Team) exam.

The SART exam was performed on Sequeira on July 22, 2011. Photographs documenting Sequeira's injuries were taken. A number of samples were collected from her, including a blood sample. The SART nurse testified that Sequeira had multiple bite marks and there was bruising to her eye, discoloration and swelling surrounding the eye area, and discoloration, redness, swelling, or bruising over many parts of her body consistent with someone hitting her and pulling her hair. Sequeira also had numerous red and linear marks down her back that could have been made with a belt. In the nurse's opinion, Sequeira's injuries were consistent with having been beaten.

---

[3] At trial, Sequeira testified defendant had forcibly injected her with a substance, which at one point he told her was "something that was going to kill [her]" and at another point he said it was "speed." Sequeira's blood sample contained methamphetamine. It is possible that the jury had a reasonable doubt whether defendant forcibly injected Sequeira since she also testified that they sometimes smoked methamphetamine together.

The nurse testified that there had been vaginal penetration and some vaginal injury but those injuries could have been consistent with normal intercourse. The nurse did not find any vaginal lacerations. She did document a red mark in the middle of Sequeira's arm, which Sequeira told the nurse was a puncture wound from a needle. The nurse testified that the mark was consistent with a puncture wound from a needle.

## II

### *Discussion*

A. *Trial Error*

1. *Defendant's Booking Photo*

Defendant now argues that the booking photograph had negligible relevance because his appearance at the time of his arrest and his identity were not issues at trial. He also asserts that the booking photograph's "scant probative value" was outweighed by its highly prejudicial effect because, in the photograph, he "wears a shirt with broad, horizontal grey-and-white stripes suggestive of a jail uniform," he "stares unsmiling into the camera and sports long, disheveled hair." Defendant contends the photograph's admission into evidence "tended to undermine the presumption of innocence, in derogation of [his] jury trial and due process rights under the United States Constitution, Sixth and Fourteenth Amendments."

a. *Background*

During direct examination, Sequeira testified that she was scared and felt like she could not leave. During cross-examination, Sequeira testified that defendant's bedroom had a door to the outside. Her car was parked off to the side of the door. A kitchen door also opened to the outside. While Sequeira was in the kitchen making something for defendant to eat, she did not walk out the door or run to his parents' house or open the door and scream for his mother.

On further redirect examination, the prosecutor asked Sequeira whether there was any difference between defendant's appearance at trial and his appearance on the night of

4

the incident. Sequeira indicated that defendant's hair was longer and he had facial hair. Defense counsel objected on the ground of relevance and under Evidence Code section 352. The prosecutor indicated that her testimony was relevant to the victim's fear of him based on his intimidating physical appearance. Defense counsel asked for a sidebar conference before publication of something, impliedly a photograph of defendant, to the jury. The court overruled the objection, finding that defendant's appearance at the time was relevant, although "not hugely," because it would "help to explain why the witness acted the way she did." For the record, defense counsel then stated that the photograph was defendant's booking photograph and it was not actually a representation of defendant's appearance on July 21, 2011. The court responded, "I would overrule the objection."

The prosecutor showed defendant's photograph to the witness and asked whether it was an accurate depiction of what defendant looked like on July 21, 2011 and July 22, 2011. After the witness said "yes," the prosecutor published the photograph to the jury.

At the close of the prosecution's case, the prosecutor moved the People's exhibits into evidence. Defense counsel simply stated that she had objected to the booking photograph. The court stated that it did not discern any prejudice and the exhibit would be allowed into evidence based on its slight probative value.

b. *Analysis*

Defense counsel raised specific objections to the victim's testimony as to the defendant's changed appearance but did not raise, on the record, specific evidentiary objections to either the publication or the admission of the booking photograph itself. Defense counsel merely stated for the record that the photograph was a booking photograph and it was not a representation of how defendant looked on July 21, 2011. It would appear that any evidentiary objection to the admission of the booking photograph was forfeited. (Evid. Code, § 353, subd. (a); *People v. Partida* (2005) 37 Cal.4th 428, 433-435.)

5

Even if the court understood the defense to be raising relevancy and Evidence Code section 352 objections to the photograph, the court's ruling did not result in prejudicial error. Evidence is relevant if it has any tendency in reason to prove or disprove any consequential disputed fact. (*Id*., § 210.) The booking photograph was relevant to defendant's appearance at the time of the alleged crimes, which in turn was relevant, albeit only very marginally, to the issue of the victim's fear of defendant and her credibility as to why she did not leave defendant's home. Before its publication to the jury or before its admission into evidence, defense counsel did not assert the photograph of defendant was an unfair representation of defendant's general appearance around the time of the alleged crimes, which took place only about two and a half weeks before defendant's arrest.

We have examined the booking photograph. In it, defendant appears serious but not menacing. He has shoulder length hair, a mustache, and a short beard. The photograph is mainly of his head and he does not patently appear to be in jail garb. A stamped number "001" appears on the bottom of the photograph but we have no reason to believe the number had any significance to the jurors. It was defense counsel who announced it was a booking photograph. In any case, before the court admitted the photograph into evidence, there was testimony that defendant had been placed under arrest in this case on August 6, 2011. Even if jurors could infer from the photograph that defendant had been arrested and taken to jail, there was independent evidence to that effect.[4] Defendant does not claim that the photograph discloses a prior criminal record. Under the circumstances, the court did not abuse its discretion in admitting the photograph into evidence.

A constitutional objection to the admission of evidence is generally "forfeited to the extent the defendant argued on appeal that the constitutional provisions required the

---

[4] Defendant was tried and found not guilty of violating section 148, subdivision (a)(1) (count 15).

trial court to exclude the evidence for a reason not included in the actual trial objection."
(*People v. Partida*, *supra*, 37 Cal.4th 428, 437-438.) A valid evidentiary objection, however, will preserve the argument that an erroneous evidentiary ruling had the additional legal consequence of violating due process. (*Ibid*.) Where a constitutional claim is preserved as gloss on the evidentiary objection raised at trial, the constitutional claim fails if the evidence was properly admitted. (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.) Here, the trial court acted within its discretion in finding the photograph was relevant and not unduly prejudicial and, therefore, we reject defendant's constitutional claim.

Even if we were to assume that admission of the photograph was error, we would consider it harmless for the reasons just discussed. (See Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Furthermore, the trial court instructed the jurors: "You must not be biased against the defendant just because he has been arrested, charged with a crime or brought to trial. A defendant in a criminal case is presumed to be innocent."

Even if we had found that the trial court erred in admitting the booking photograph, we would find no due process violation. "Only when evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' [citation] [has the United States Supreme Court] imposed a constraint tied to the Due Process Clause. See, e.g., *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (Due process prohibits the State's 'knowin[g] use [of] false evidence,' because such use violates 'any concept of ordered liberty.')." (*Perry v. New Hampshire* (2012) __ U.S. __, __ [132 S.Ct. 716, 723]; see *Lisenba v. California* (1941) 314 U.S. 219, 236-237 [62 S.Ct. 280] [coerced confession].) The admission of defendant's booking photograph did not rise to that level under the circumstances of this case.

7

2. *Alleged Prosecutorial Misconduct During Closing Argument*

Defendant argues that the prosecutor engaged in multiple instances of misconduct during his closing argument and the prosecutorial misconduct was so pervasive that it infected his trial with fundamental unfairness and violated his "right to a fair trial under federal due process principles." He maintains that the prosecutor "repeatedly and improperly attacked the integrity of defense counsel" and suggested defense counsel knew defendant was guilty. Defendant points to prosecutorial remarks to which defense counsel unsuccessfully objected and to other unchallenged comments, as to which he now claims objection was futile.

a. *Governing Law*

" 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.) "A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct." ' [Citations.] Finally, the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' [Citations.]" (*Id.* at pp. 820-821.) "A defendant claiming [on appeal] that one of these exceptions applies must find support for his or her claim in the record. [Citation.] The ritual incantation that an exception applies is not enough." (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

" 'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a

denial of due process.' (*People v. Morales* (2001) 25 Cal.4th 34, 44 . . . ; accord, *Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 106 S.Ct. 2464]; *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 643 [40 L.Ed.2d 431,94 S.Ct. 1868].) Under California law, a prosecutor who uses deceptive or reprehensible methods of persuasion commits misconduct even if such actions do not render the trial fundamentally unfair. (*People v. Cook* (2006) 39 Cal.4th 566, 606 [47 Cal.Rptr.3d 22, 139 P.3d 492].)" (*People v. Doolin* (2009) 45 Cal.4th 390, 444.) "[O]ur state law requires reversal when a prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct" ' [Citation.]" (*People v. Davis* (2009) 46 Cal.4th 539, 612.)

b. *Prosecutorial Comment Related to Defendant's Changed Appearance*

During his initial closing argument, the prosecutor suggested that Sequeira had been honest with the jury. He stated that "[s]he told you some embarrassing things" and "[s]he didn't pretend to be anyone other than herself." He further argued: "Her tattoos were showing. Her wrist and her forearm. She didn't cut her hair or shave her beard and wear glasses to look a little more presentable." Defense counsel did not object.

Defendant contends that the prosecutor's remark concerning defendant's changes in his appearance for trial improperly suggested to the jury that it should consider his "unflattering image in the booking photo as substantive evidence of guilt" and was a "blatantly improper appeal to prejudice." He argues that the remark about his "booking photo was tantamount to an argument that he was ' "a bad man and presumably guilty, because he had a bad face." ' [Citation.]"

Defendant overstates the import of the prosecutor's argument related to defendant's changed appearance. The prosecutor was arguing that the victim was being upfront since, unlike defendant, she had not changed her appearance for trial. In any case, defendant forfeited his claim of prosecutorial misconduct by failing to object and

9

request an admonition of the jury and he has not demonstrated that any exception applies. (See *People v. Schmeck* (2005) 37 Cal.4th 240, 298, abrogated on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-637.)

c. *Prosecutorial Comment Related to Defense Witness*

The prosecutor subsequently suggested that the defense did not ask defense witness, Ashley Bent, whether defendant had a new live-in girlfriend at the time of the alleged crimes because defense counsel "knew how bad Ashley lied and they just wanted to get what they could from her." Defense counsel objected on grounds it was "improper what [she herself] thought." The court overruled the objection, stating, "This is argument."

On appeal, defendant challenges that remark on the ground that it is improper for a prosecutor to imply that defense counsel fabricated evidence or malign defense counsel's character. Defense counsel's limited objection at trial did not encompass the contentions now raised and, therefore, they were forfeited. (See *People v. Thomas* (2012) 54 Cal.4th 908, 939.)

Moreover, our reading of the argument does not disclose, as defendant now claims, that the prosecutor was making "a baseless suggestion that defense counsel either suborned, or was indifferent to a likelihood of, her witness committing perjury." It appears to us that the prosecutor's statement actually cuts the other way since it suggests that defense counsel acted ethically by not seeking to elicit false testimony about whether defendant's new girlfriend had been living with him. It is not reasonably likely that the jury understood the prosecutor's remark as an attack on defense counsel's personal integrity. In any case, a timely objection and admonition would have cured any harm.

The prosecutor's comment is more aptly characterized as a disparagement of a defense witness. "Harsh and colorful attacks on the credibility of opposing witnesses are permissible if fairly based on the evidence. [Citations.]" (*People v. Shazier* (2014) 60 Cal.4th 109, 146.) Counsel is "allowed to argue, from the evidence, that a witness's

10

testimony is unbelievable, unsound, or even a patent 'lie.' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 162.) In this case, however, defense counsel did not object on the ground that the prosecutor was improperly denigrating a defense witness and such objection was forfeited.

d. *Prosecutorial Comments Relating to Defense Counsel*

At the beginning of the prosecutor's rebuttal closing argument, after indicating that defense counsel had inaccurately described the facts shown by the evidence, the prosecutor stated: "That's what she's supposed to do is try to confuse, try to catch one of you guys that way or try to create some kind of doubt. But you're chosen by me to do justice and not be fooled by that. I don't think you were. [¶] Of course, it's the scariest part of the trial for her and her defendant client because he's guilty. The evidence showed it, my argument showed it, and now they're scared." Defense counsel did not object. Defendant claims that objection would have been futile but the record fails to support that assertion. Consequently, the objection was forfeited.

In addition, "[a]n attorney, including a prosecutor, is entitled to point out that the opposing side is engaging in what the attorney believes to be an attempt to confuse the issues, and may urge the jury to ignore that attempt and focus on the relevant evidence." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 31-32; see *People v. Medina* (1995) 11 Cal.4th 694, 759 [prosecutor did not make an improper personal attack on a defense counsel's integrity "by observing that 'any experienced defense attorney can twist a little, poke a little, try to draw some speculation, try to get you to buy something . . . .' "].)

Subsequently, the prosecutor advised the jury: "Remember what you heard, review the evidence and use your common sense. She [defense counsel] doesn't want you to do that." Defense counsel did not object and request an admonition as to this statement. Any objection was forfeited.

The prosecutor then referred back to defense counsel's comments on reasonable doubt. He accused defense counsel of claiming that any doubt constitutes "reasonable

doubt." The prosecutor then stated: "Think about that leaping logic. That's the kind of thing that their [*sic*] trying to get you to do, leap and think about and do [*sic*] because—" Defense counsel objected on grounds that the prosecutor was misstating her argument. The trial court responded, "Well, it's up to the jury to determine that. Overruled."

The trial court properly overruled that objection. "[T]he prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account. [Citations.]" (*People v. Bemore* (2000) 22 Cal.4th 809, 846.)

The prosecutor then stated, "This guilty man, she did that so that this guilty man would not be convicted." Defense counsel did not interpose an objection to this specific statement. Any objection was forfeited.

With respect to great bodily injury, the prosecutor implied that defense counsel had misled the jury by suggesting that the seriousness of the injury had to be on par with broken bones. The prosecutor stated: "The whole G.B.I. argument, read the jury instruction. Ladies and gentlemen, there's no requirement that there be broken bones, broken wrists, whatever she [*sic*]. Kind of looked you in the eye, there has to be, like broken wrists, broken—no, there doesn't." Defense counsel objected on grounds that the prosecutor had misstated what she had said and it was "inappropriate." The trial court overruled the objection; the court told the jurors that "[t]he instructions are set forth that you'll read" and reminded the juror's that it had read the instructions to them.

The court's ruling was proper in the defense closing argument, counsel had used "broken wrists" as an illustration of great bodily injury. The attack on this argument fell within the prosecution's wide latitude. (See *People v. Bemore*, *supra*, 22 Cal.4th at p. 846; see *People v. Smith* (2003) 30 Cal.4th 581, 635 [attacking the defense case and argument is proper].) Defendant does not contend that the prosecutor misstated the law. Moreover, the court directed the jury to its instructions, which was sufficient to cure any conceivable harm.

12

With respect to Sequeira's failure to attempt to leave defendant's house during the incident, the prosecutor implied that defense counsel had misled the jury by suggesting there were other houses on defendant's street. The prosecutor stated: "This is the middle of a ranch. It's a labor camp. The only people who came to testify that were nearby were his people; his parents' house and a friend's house. And he told her, [y]ou try to get away, it's going to get worse. [¶] Maybe the defense attorney is a lot braver woman."

Defense counsel did not object to the "braver woman" remark and, consequently, any objection was waived. Defendant now contends that an objection would have been futile. The proper overruling of prior defense objections did not render the objection futile and the record does not support application of a futility exception.

The prosecutor subsequently argued defendant was guilty as charged and then told the jury, "Don't forget, don't forget how hard [defense counsel] fought to keep the picture of what he looked like in reality out." Defense counsel objected on grounds that argument was "improper." The court overruled the objection and stated, "It's his booking photo."

The prosecutor then stated, "Don't forget how hard [defense counsel] objected as the SART nurse recounted injuries and photographs. She took—" After a judicial comment, the prosecutor clarified that he was talking "about how hard [defense counsel] objected as the SART nurse testified to the injuries." Defense counsel objected and stated, "That's misconduct." The court overruled the objection without explanation.

We agree that defense counsel's unsuccessful evidentiary objections were not evidence and the prosecutor improperly denigrated counsel and invited the jury to draw adverse inferences from counsel's objections. "Casting uncalled for aspersions on defense counsel directs attention to largely irrelevant matters and does not constitute comment on the evidence or argument as to inferences to be drawn therefrom." (*People v. Thompson* (1988) 45 Cal.3d 86, 112.) " 'A prosecutor commits misconduct if he or she attacks the integrity of defense counsel, or casts aspersions on defense counsel.' (*People*

13

*v. Hill* (1998) 17 Cal.4th 800, 832 . . . .)  'If there is a reasonable likelihood that the jury would understand the prosecutor's statements as an assertion that defense counsel sought to deceive the jury, misconduct would be established.'  (*People v. Cummings* (1993) 4 Cal.4th 1233, 1302 . . . .)"  (*People v. Turner* (2004) 34 Cal.4th 406, 429.)

Although defense counsel objected, she failed to request a curative admonition, which would have cured any harm.  (See *People v. Montiel* (1993) 5 Cal.4th 877, 914.)  "A claim of prosecutorial misconduct is not preserved unless the defendant makes a *timely* objection *and* requests an admonition . . . .  [Citation.]"  (*People v. Hajek* (2014) 58 Cal.4th 1144, 1241.)  Even assuming the prosecutor's statements concerning defense counsel's evidentiary objections constituted prosecutorial misconduct under state law and the trial court overruled the objection so quickly that there was no opportunity to request an admonition, we find no miscarriage of justice.  The jury instructions rendered the misconduct harmless.

The jury was instructed:  "You must decide what the facts are in this case.  You must use only the evidence that is presented in the courtroom.  Evidence is the sworn testimony of witnesses, the exhibits that were admitted into evidence, and anything else I tell you to consider as evidence."  The court explicitly told the jury:  "Nothing that the attorneys say is evidence.  In opening statements and closing arguments the attorneys will discuss the case, but their remarks are not evidence.  Their questions are not evidence.  [¶]  Only the witnesses['] answers are evidence.  The attorneys['] questions are significant only if they help you understand the witness's answers.  And do not assume that something is true just because one of the attorneys asked a question that suggests that it is true."

The court admonished the jury to not let bias influence its decision.  It told the jury that bias includes bias for or against an attorney.

The court thoroughly explained the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt.  Although defendant was tried

14

on eleven counts, the jury convicted him of only three crimes, one of which was a lesser offense of the offense charged. It did not find him guilty of any sexual crime.

e. *Conclusion*

Contrary to defendant's assertion, this is not a case where the prosecutor's misconduct was so outrageous and pervasive that proper objection would have been futile. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 501-502; cf. *People v. Hill*, *supra*, 17 Cal.4th at pp. 845-846.) In every instance where counsel failed to timely object, an admonition would have cured any harm and his failure to object was not excused. "Whatever methods a trial or appellate court might otherwise use to bring to heel a recalcitrant or incorrigible prosecutor, the federal Constitution does not require (and the state Constitution does not permit) the reversal of a criminal conviction unless the misconduct deprived defendant of a fair trial or resulted in a miscarriage of justice. [Citation.]" (*People v. Hinton* (2006) 37 Cal.4th 839, 865.) Whether we consider the prosecutor's properly challenged comments separately or together, we find no basis for reversal.

3. *Alleged Griffin error*

*Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229] held that "the Fifth Amendment, . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids . . . comment by the prosecution on the accused's silence . . . ." (*Id.* at p. 615, fn. omitted.) "*Griffin* prohibits the . . . prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt." (*Baxter v. Palmigiano* (1976) 425 U.S. 308, 318-319 [96 S.Ct. 1551].) "Under the rule in *Griffin*, error is committed whenever the prosecutor . . . comments, either directly or indirectly, upon defendant's failure to testify in his defense." (*People v. Medina*, *supra*, 11 Cal.4th at p. 755.)

*Griffin*'s "prohibition does not, however, 'extend to comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical

15

witnesses.' (*People v. Medina*, [*supra*,] 11 Cal.4th 694, 755 . . . .)  Moreover, 'brief and mild references to a defendant's failure to testify without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error.'  (*People v. Hovey* (1988) 44 Cal.3d 543, 572 . . . .)"  (*People v. Turner*, *supra*, 34 Cal.4th at pp. 419-420.)

Toward the beginning of rebuttal closing argument in this case, the prosecutor responded to defense counsel's insinuation that Sequeira had a bad motive and defense counsel's repeated references to her as "Sinister," the nickname Sequeira had used in text messages that she sent to defendant.  The prosecutor stated:  "That's kind of what [defense counsel] was saying.  She's a bad person.  Sinister means—what did she say—intending to do bad will or something like that.  We heard what this man did.  Regardless of what his name is, we know what he did to that lady.  You have no evidence before you, you have nothing except what the victim told you in this case, what Ms. Sequeira told you.  [¶]  And I know it's hard for you to make sense because she was kind of all over the place."

Defendant contends that the prosecutor impermissibly commented on his failure to testify and the comment constitutes constitutional error.  Defendant's claim of *Griffin* error was forfeited by defendant's failure to object in the trial court.  (See *People v. Medina*, *supra*, 11 Cal.4th at p. 756; *People v. Johnson* (1992) 3 Cal.4th 1183, 1227-1228.)  Contrary to defendant's claim, the record does not demonstrate that proper objection would have been futile.  Furthermore, taken in context, there is no reasonable likelihood the jury understood the prosecutor's remarks as an invitation to draw an improper inference of guilt from defendant's decision not to testify.  (See *People v. Medina*, *supra*, at p. 756.)

16

4. *Cumulative Effect of Alleged Trial Errors*

Defendant argues that "[u]nder either state or federal prejudice standards, the judgment should be reversed for cumulative error." We found only limited trial error, if any. No cumulative prejudicial effect warrants reversal.

B. *Sentencing by Judge Who Did Not Preside at Trial*

1. *Background*

Sentencing before Judge Leon P. Fox, who had presided over defendant's jury trial in San Benito County Superior Court, was originally set for November 28, 2012. According to defendant, Judge Fox was a visiting judge. Apparently, there was an in-chambers discussion before the scheduled sentencing hearing.

On the record at the November 28, 2012 hearing, the probation department asked for a continuance to complete its sentencing report. Defense counsel asserted that defendant had a due process right to be sentenced by the judge who actually heard the evidence at trial. Judge Fox stated for the record that, although he was willing to return for sentencing, Judge Sanders preferred that the matter be set for sentencing on Judge Sanders's calendar to spare the county the expense of paying a court reporter to come at a time when court reporters do not normally appear. Judge Fox also disclosed that he "was willing to come back without a fee, but apparently that puts a disruption in the court's schedule." Judge Fox further stated: "If, after reviewing the probation report and consulting with Judge Sanders, it becomes his decision that I would be the better choice, then he will set it on the date that I can come back and do the sentencing. So your motion at this time is premature. Once the probation department has done their work, once you've had a chance to review everything and consult with Judge Sanders, then if there's some kind of motion for me to be here, fine." The sentencing hearing was rescheduled for December 13, 2012.

On December 11, 2012, defense counsel filed a written motion to continue the sentencing hearing for reasons unrelated to defendant's desire to be sentenced by

17

Judge Fox.  In her supporting declaration, executed on December 10, 2012, defense counsel stated that she had not yet received the probation report and it was important that she receive and review the report prior to the sentencing hearing "[b]ecause Mr. Quintero will be sentenced by a judicial officer other than the judge who presided over the trial . . . ."

On December 13, 2012, the sentencing hearing was reset for December 27, 2012.  Prior to December 27, 2012, defendant did not bring a motion to have Judge Fox, who presided over his trial, impose sentence.

On December 27, 2012, the parties appeared before Judge Steven R. Sanders for sentencing.  Defense counsel moved for a continuance of the sentencing hearing and requested that Judge Fox be allowed to return to sentence defendant.  The court indicated that sentencing at that time was appropriate and "the normal custom."  The court stated: "It's not merely an administrative convenience or a justification including cost considerations and fairness to both the People and to the defense."  It noted that "this is a general assignment and outside of the limited scope of involvement of Judge Fox" and indicated that "[t]his court has been processing this case and it's familiar with this case."  The court proceeded with sentencing.

Judge Sanders noted that defendant was on probation when the instant crimes were committed.  The judge imposed the upper term of four years on defendant's aggravated assault conviction (former § 245, subd. (a)(1)), citing the fact that defendant's adult convictions are numerous and of increasing seriousness.  (See Cal. Rules of Court, rule 4.421(b)(2).)  The judge sentenced defendant to a consecutive term of eight months (one-third of the middle term) on the criminal threats conviction (§ 422), citing "the fact that the crime involved a threat of great bodily harm or actions disclosing a high degree of cruelty, viciousness or callousness."  (See Cal. Rules of Court, rule 4.421(a)(1)).  The judge imposed additional enhancement terms, three years for personal infliction of great bodily injury (§ 12022.7, subd. (a)) and two years for the two prior prison terms (§ 667.5,

18

subd. (b)).  The judge imposed a concurrent 180-day term for disobeying a court order (§ 166, subd. (a)(4)).  Defendant does not raise any sentencing error on appeal.

2. *Analysis*

Citing *People v. Jacobs* (2007) 156 Cal.App.4th 728 (*Jacobs*) and *People v. Strunk* (1995) 31 Cal.App.4th 265 (*Strunk*), defendant argues that his request to have Judge Fox, rather than Judge Sanders, impose sentence established good cause for granting a continuance to allow Judge Fox to impose sentence and Judge Sander's denial of a continuance constituted "a legal abuse of discretion."  He asserts that Judge Sanders stated no good reason for denying the request for a continuance.  He argues that Judge Sanders's reasoning contradicted the authorities holding that sentencing by the trial judge is the preferred procedure.

The California Supreme Court has stated:  "It is settled that it is not error for a judge other than the one who tried a criminal case to pronounce judgment and sentence. [Citations.]" (*People v. Downer* (1962) 57 Cal.2d 800, 816.)  "Unlike a defendant who enters into a plea bargain with an implied term that the same judge who accepts the plea will impose the sentence [citation], a defendant who has been convicted after trial has no such right.  [Citation.]" (*Jacobs*, *supra*, 156 Cal.App.4th at p. 733.)  Yet, it is also established that "a defendant's interest in a full and fair sentencing hearing usually is best served when the hearing is presided over by the same judge who heard the evidence at trial.  [Citations.]" (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1261.)

In *Jacobs*, *supra*, 156 Cal.App.4th at page 735 the appellate court held that the trial court abused its discretion by refusing to continue a sentencing hearing for three days until the trial judge was available for sentencing.

In *Strunk*, *supra*, 31 Cal.App.4th 265, the trial judge did not sentence the defendant.  The appellate court took "judicial notice that the trial judge is still an active judge of the San Diego Superior Court and is assigned to the South Bay Division." (*Id.* at p. 275, fn. 12.)  The court found it significant that the sentencing judge had overlooked

mitigating factors raised at trial: "Although there may be certain cases and circumstances where sentencing by other than the trial judge will not interfere with the defendant's right to a fair and full sentencing hearing based on the record in the case, the probation report, and other statements or evidence submitted for the sentencing hearing, this is not one of them. Here the sentencing judge exercised his sentencing discretion based solely on the probation officer's report with respect to the conclusion there were no mitigating factors. Because the judge had not sat through the trial, and only reviewed the probation report which did not list at least three of the mitigating factors claimed by Strunk in the trial record, we cannot find that the judge exercised its required independent sentencing discretion or properly weighed all the circumstances." (*Id*. at p. 275.)

The appellate court in *Strunk* additionally observed that the superior court followed "a unique administrative procedure" under which all cases were transferred from the trial judge to the supervising judge for sentencing in order "to facilitate the court's settlement practices." (*Strunk*, *supra*, 31 Cal.App.4th at p. 275, fn. 12.) The appellate court disapproved "[s]uch blanket procedure" because, "without an explicit agreement by the defendant or some showing of good cause, [the procedure] denies a defendant his or her right to an independent, full and fair sentencing hearing . . . " (*id*. at p. 275, fn. omitted) and is contrary to the "implied natural course of proceedings that are expected by the defendant" which contemplates sentencing by the trial judge. (*Id*. at p. 275, fn. 13.)

This case can be distinguished from both *Jacobs* and *Strunk*. To begin with, defendant did not show good cause for failure to timely request a continuance to facilitate sentencing by the trial judge. (See § 1050, subds. (b) & (d).) Section 1050, subdivision (b), generally requires a written motion for a continuance to be "filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued . . . ." Subdivision (c) of section 1050 permits a motion for a continuance without compliance with subdivision (b) upon a showing of good cause but the court is

20

precluded from granting the motion if the moving party is unable to show good cause. (§ 1050, subd. (d).) In *Jacobs*, the appellate court found that the defendant's lack of advance knowledge that the trial judge would not be the sentencing judge "constitutes good cause justifying an oral motion in this instance." (*Jacobs*, *supra*, 156 Cal.App.4th at p. 735.) In this case, however, defense counsel's supporting declaration filed December 11, 2012 shows that she knew that the trial judge would not be sentencing defendant. Absent a showing of good cause for an untimely continuance motion, Judge Sanders did not abuse his discretion in denying defendant's motion for a continuance.[5]

In addition, Judge Sanders obliquely stated that "this is a general assignment and outside of the limited scope of involvement of Judge Fox." The appellate record does not establish that Judge Fox was sitting under temporary assignment as a judge of the San Benito County Superior Court on December 27, 2012, when defendant was sentenced, and the judge would continue sitting under assignment for any specific period of time. Judge Fox's previously expressed, personal willingness to return to sentence defendant does not mean that he was available in a legal sense on any date in the near future. On appeal, error must be affirmatively shown. (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) In *Jacobs*, in contrast to this case, "the trial judge had set the sentencing on his calendar, in his department, and would be available in three court days to impose it." (*Jacobs*, *supra*, 156 Cal.App.4th at p. 730.)

---

[5]     Defendant alternatively argues that defense counsel rendered ineffective assistance by failing to bring a timely motion for a continuance to allow Judge Fox to sentence him. The record does not demonstrate that defense counsel necessarily acted unreasonably and, in any case, defendant has not established prejudice under *Strickland v. Washington* (1984) 466 U.S. 668. (See *Id.* at pp. 687-690, 694.) Defendant has not met the burden of showing a reasonable probability that defendant would have received a more lenient sentence had his counsel made a timely motion for a continuance. (See *Harrington v. Richter* (2011) __ U.S. __, __ [131 S.Ct. 770, 791-792]; *Strickland v. Washington*, *supra*, at p. 694.)

Unlike *Strunk*, there has been no claim in this case that the sentencing judge relied on a probation report that omitted mitigating circumstances or was otherwise inaccurate. Also, unlike *Strunk*, the record does not disclose that the San Benito County Superior Court routinely followed an administrative practice of transferring cases from the trial judges to the presiding judge for sentencing.

Even if we were to somehow conclude that Judge Sanders should have granted a continuance to allow Judge Fox to sentence defendant, defendant has failed to show reversible error. Under the California Constitution,"[n]o judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.) This standard of review is "based upon reasonable probabilities rather than upon mere possibilities . . . ." (*Id*. at p. 837.)

Defendant concedes that "there exists an element of speculation concerning the sentence that Judge Fox might have ultimately imposed." He suggests that, since his sentence was already enhanced based upon his prior prison terms, Judge Fox might have not have imposed an aggravated term on the ground that his prior convictions were numerous or of increasing seriousness. Defendant also proposes that Judge Fox "might" have considered defendant's diagnosis of bi-polar disorder and his methamphetamine problem, which defense counsel raised at the sentencing hearing, as factors in mitigation.

Mere conjecture is insufficient to satisfy the *Watson* standard. (See *People v. Fields* (1983) 35 Cal.3d 329, 359.) Defendant has failed to show reversal error.[6]

## DISPOSITION

The judgment is affirmed.

---

[6] Moreover, defendant has not shown there is any meaningful relief that may be granted at this time. Judge Fox is not currently a judge of the San Benito County Superior Court. Accordingly, defendant's contention that he is entitled to a new sentencing hearing before Judge Fox appears moot. (See *Consolidated Vultee Air. Corp. v. United Automobile* (1946) 27 Cal.2d 859, 862-863, 865; cf. *People v. Calloway* (1981) 29 Cal.3d 666, 668.) Where a defendant unsuccessfully brings a timely and meritorious motion for a continuance to allow the trial judge to perform sentencing, a defendant might need to seek relief by way of petition for writ of mandate to obtain any meaningful relief.

_____

ELIA, Acting P. J.


WE CONCUR:




_____

BAMATTRE-MANOUKIAN, J.




_____

MIHARA, J.