Filed 2/9/15  P. v. Medina CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C073622 |
| Plaintiff and Respondent, | (Super. Ct. No. CR-F-09-4840) |
| v. | |
| ALBERTO AMBRIZ MEDINA, | |
| Defendant and Appellant. | |

A jury convicted Alberto Ambriz Medina of single counts of selling, transporting, and offering to sell, and two counts of possessing for sale, a controlled substance (methamphetamine).  (Health & Saf. Code, §§ 11378, 11379, subd. (a).)[1]  The jury also

---

[1]  This was defendant's second trial; his first trial ended with a deadlocked jury.

found that defendant possessed at least 57 grams of methamphetamine and was personally armed with a firearm during the commission of the offering to sell offense. (Pen. Code, §§ 1203.073, subd. (b)(2), 12022, subd. (c).)[2] These offenses arose from two transactions. Defendant was sentenced to a state prison term of 10 years.

On appeal, defendant contends (1) the evidence is insufficient that he possessed methamphetamine for sale in the two transactions; (2) the trial court erred in not instructing on the defense of entrapment; (3) the trial court erred when it imposed aggravated sentences on count 4 (offering to sell methamphetamine) and on that count's accompanying firearm enhancement; (4) the trial court erred when it failed to stay the sentences on counts 1, 2, and 3 pursuant to section 654, as there was actually just one transaction here, not two; or, alternatively, the sentence on counts 2 and 3 (possession and transportation) should have been stayed as they were part of count 1 (sale); and (5) the abstract of judgment erroneously reflects the sentence imposed. We agree that the concurrent sentences imposed on counts 2 and 3 must be stayed under section 654. We shall affirm the judgment as so modified. We also direct the trial court to correct errors in the abstract of judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Prosecution Case

In October 2009, Pedro Perez, an informant, called his contact at the Napa County Sheriff's Department in connection with a source for the sale of a pound of methamphetamine. Deputy Oscar Ortiz was skeptical about the large amount, so he met with Perez, who offered to call the seller. Ortiz listened in and confirmed that such a transaction was possible.

---

[2]  Undesignated statutory references are to the Penal Code.

2

***First Transaction—Lorenzo's Market and***
***Negotiation for One-pound Purchase***

Based on this prelude, on October 14, 2009, another deputy, Chet Schneider, while wearing a recording device, called defendant to coordinate the purchase of methamphetamine. Defendant agreed to sell an "eight ball" (eighth of an ounce) for $220.

Perez and Deputies Schneider and Ortiz went to Lorenzo's Market in Winters. Defendant arrived there as a passenger in a Lincoln driven by Antonio Zuniga. Perez introduced Deputy Schneider to defendant; Schneider recognized defendant's voice. Schneider and defendant walked away.

Deputy Schneider assumed he was going to buy from defendant; but defendant told him to talk to Zuniga, who had the drugs. Schneider gave Zuniga $220. Zuniga retrieved methamphetamine from the Lincoln's glove box and broke off an eighth of an ounce (3.59 grams).

Subsequently, Zuniga and Deputy Schneider began negotiating the purchase of one pound of methamphetamine. Schneider called Deputy Jesse Hicks to bring $16,000 to Lorenzo's Market. Schneider showed the money to Zuniga. Defendant joined the conversation and was present when Zuniga and Schneider agreed to meet in 90 minutes at the same location for the second transaction.

After the first transaction, Deputy Bill McGlothern tailed defendant and Zuniga but eventually lost sight of their car.

Later that evening, around 7:30 p.m., defendant called Deputy Schneider and said he could not return to Lorenzo's Market because he was being followed. Schneider and defendant renegotiated the meeting location to a Carl's Jr. in Williams. Defendant testified that he went to the Carl's Jr. because Schneider pressured him; however, during

3

his first trial, defendant testified that he went to Carl's Jr. only to get methamphetamine for his own use.

*Second Transaction—Carl's Jr. in Williams*

Around 11:00 p.m. the same night, Deputy Schneider met defendant at the Carl's Jr. Defendant knew that Schneider came to the Carl's Jr. for a drug deal. For 50 minutes, defendant and Schneider conversed about Perez, money, and changing the meeting location. Schneider inquired whether defendant would charge a lower price–perhaps $15,000 or $15,500–if Schneider purchased every week. Defendant replied, "Yeah." Subsequently, defendant directed Schneider to another vehicle, a Dodge Durango, in which Zuniga and Zuniga's son were sitting.

Deputy Schneider and Zuniga had additional negotiations. Then Zuniga showed the methamphetamine to Schneider—it was in the Durango's engine compartment, packaged in two separate bags that together weighed 526.8 grams, more than one pound.

Once the drugs were located, defendant was arrested as he was driving his car from the parking lot. In defendant's car, deputies found a loaded rifle and some methamphetamine pipes.

## B. Defense Case

*Defendant's Relationship with Perez and Zuniga*

Defendant met Perez in 2003; they worked together. Defendant met Zuniga at Perez's house in Calistoga, and learned that Zuniga was a drug dealer from Williams.

Perez sold or sometimes just gave methamphetamine to defendant. Defendant spent about $60 to $80 per week on his habit. Even after defendant moved from Calistoga, defendant continued to purchase methamphetamine from Perez.

Before the transaction at Lorenzo's Market, Perez contacted defendant and asked defendant to contact Zuniga for the purchase of a pound or more of methamphetamine.

4

For doing this, Perez intended to give defendant some drugs for defendant's own use, but not as a payment for setting up the drug deal.

*First Transaction—Lorenzo's Market in Winters*

Deputy Schneider called defendant and they agreed to meet at Lorenzo's Market in Winters. Defendant in turn called Zuniga. When defendant drove with Zuniga to Lorenzo's Market—although he knew about the drug deal—he did not know where Zuniga kept the drugs in the car. Defendant went with Zuniga merely to obtain his dose of methamphetamine.

When Deputy Schneider asked defendant for the drugs, defendant said he was not the one selling and directed Schneider to Zuniga. Perez did not give defendant drugs before leaving, nor did Zuniga pay defendant for riding with him to the first transaction.

*Second Transaction—Carl's Jr. in Williams*

When Deputy Schneider called defendant, defendant said he was not returning to Winters because he was being followed. Schneider insisted they meet in Williams because he needed the drugs that night as he had already lined up a buyer.

In the Carl's Jr. parking lot, defendant spoke with Deputy Schneider for 50 minutes. He had two conversations with Zuniga, and told Zuniga the location of the transaction. He also relayed messages between Zuniga and Schneider. Defendant also had a phone conversation with Perez, who told defendant to leave when Zuniga arrived and that defendant's drugs were in nearby hotel.

When Zuniga arrived, defendant pointed him out to Deputy Schneider. However, defendant did not know where the drugs were located in Zuniga's car. Then defendant left to obtain his drugs from Perez. Defendant did not receive anything from Zuniga.

5

Before leaving the parking lot, defendant was arrested. He had a loaded gun with him because his work required him to destroy animals that damage levees on the Sacramento River.

## DISCUSSION

### I. There Was Sufficient Evidence That Defendant Aided and Abetted the Possession of Methamphetamine for Sale (Counts 2 and 5)

Defendant contends he did not possess methamphetamine for sale (counts 2 and 5) because there was insufficient evidence that he actually or constructively possessed the drug. Even if we were to agree that the evidence of defendant's personal possession is insufficient, the evidence is more than sufficient that defendant aided and abetted the two possessions for sale so as to be convicted of counts 2 and 5.

"[A] person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) An aider and abettor is someone who " ' "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." ' " (*People v. Jurado* (2006) 38 Cal.4th 72, 136 (*Jurado*).)

" 'Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment.' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) In reviewing the sufficiency of evidence in a criminal appeal, we ask whether a rational jury could have found the defendant guilty beyond a reasonable doubt. (*People v. Hill* (1998) 17 Cal.4th 800, 848-849.)

Here, the trial court instructed the jury on aiding and abetting (CALCRIM No. 401).

6

There is sufficient evidence that defendant aided and abetted counts 2 and 5 (possessing methamphetamine for sale) under *Jurado's* three-prong test for aiding and abetting. (*Jurado*, *supra*, 38 Cal.4th at p.136.)

First, defendant knew that Zuniga intended to possess methamphetamine to sell an "eight ball" to Deputy Schneider (first transaction), as defendant set up that transaction. Defendant also knew that Zuniga and Schneider negotiated the purchase of one pound of methamphetamine (second transaction); in fact, defendant voluntarily joined that negotiation.

Second, defendant had the intent of committing, encouraging, or facilitating the possession of methamphetamine for both transactions. (*Jurado*, *supra*, 38 Cal.4th at p. 136.) Defendant was the point-person for both transactions. He was physically present during both. Defendant may not have received any money or touched the methamphetamine but he encouraged Zuniga to maintain possession of methamphetamine for both transactions—he put parties in contact with each other, he rode with Zuniga in a car that had the drugs for the first transaction, and he made sure that Zuniga showed up at Carl's Jr. with the drugs for the second transaction.

And, third, by his conduct, defendant aided and promoted possession of methamphetamine for both transactions. (*Jurado*, *supra*, 38 Cal.4th at p. 136.) For the first transaction at Lorenzo's Market, defendant discussed the details of the meeting with Deputy Schneider, set the price for the eighth of an ounce of methamphetamine at $220, and met with Schneider before directing him to Zuniga to complete the transaction. For the second transaction at Carl's Jr., defendant contacted Schneider to change the meeting location to Winters, attempted to renegotiate the location and price after he arrived at Carl's Jr., communicated location details to Zuniga, and directed Schneider to Zuniga to complete the transaction for the one pound of methamphetamine. Moreover, defendant

7

was present when Schneider negotiated with Zuniga for 10 to 20 minutes at Carl's Jr., and defendant had a loaded firearm in his car.

Defendant was not some passive associate; instead, he was actively involved in planning and facilitating the possession of methamphetamine for both transactions.

Based on the evidence that defendant aided and abetted the possession of methamphetamine for sale for both transactions, we need not resolve whether defendant personally had "actual or constructive possession of methamphetamine" for the two transactions. As an aider and abettor, defendant was a principal in the crime. (*McCoy*, *supra*, 25 Cal.4th at pp. 1116-1117.) Consequently, the evidence was sufficient to convict defendant of possessing methamphetamine for sale in counts 2 and 5.

## II. The Trial Court Acted Properly in Not Instructing on Entrapment

Defendant contends the trial court on its own initiative (sua sponte) should have instructed the jury on the defense of entrapment. We disagree.

A trial court must instruct on legal "principles closely and openly connected with the facts of the case, and which are necessary for the jury's understanding of the case . . . [including] . . . an affirmative defense . . . even in the absence of a request, 'if it appears the defendant is relying on such a defense, or if there is a substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Boyer* (2006) 38 Cal.4th 412,468-469; see *People v. Barraza* (1979) 23 Cal.3d 675, 691 (*Barraza*).) "The testimony of a single witness, including the defendant, can constitute substantial evidence requiring the court to instruct on its own initiative." (*People v. Lewis* (2001) 25 Cal.4th 610, 646.)

Under *Barraza*, an entrapment defense is available when a rational jury could conclude from the evidence that the conduct of law enforcement was "likely to induce a normally law-abiding person to commit the offense." (*Barraza*, *supra*, 23 Cal.3d at

8

pp. 689-690.)  The purpose of the entrapment defense is to deter police misconduct and the manufacturing of crimes.  (*Id.* at pp. 688-689.)

"[B]adgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime" constitute entrapment.  (*Barraza*, *supra*, 23 Cal.3d at p. 690.)  Moreover, entrapment occurs when law enforcement actions make the offense "unusually attractive to a normally law-abiding person" by "friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose … [or by] a guarantee that the act is not illegal or the offense will go undetected, [or by] an offer of exorbitant consideration, or any similar enticement."  (*Ibid.*)  But "[o]fficial conduct that does no more than offer th[e] opportunity" to commit an offense does not constitute entrapment.  (*Ibid.*)

Here, the trial court did not have a sua sponte duty to instruct on entrapment (CALCRIM No. 3409) because this instruction was not supported by substantial evidence.

Here, there was no evidence to indicate that law enforcement made the crime unusually attractive, offered friendship or sympathy, or badgered or cajoled defendant.  (*Barraza*, *supra*, 23 Cal.3d at p. 690.)  The deputies simply presented defendant with an opportunity to sell methamphetamine.  Defendant agreed to sell Deputy Schneider an "eight ball" for $220 (first transaction).  He voluntarily joined the conversation between Schneider and Zuniga concerning the second transaction.  Defendant discussed the particulars of how the second transaction would occur.  When defendant, before the second transaction, expressed concern about being followed, Schneider suggested a location change, to which defendant eventually agreed.  At no point during the second transaction did defendant express a desire to leave or call off the transaction.  Indeed, defendant, while remaining in his car, conversed with Schneider for 50 minutes at the

time of the second transaction; he could have ended the transaction at any point and driven off.

There were no threats or cajoling to go forward with either transaction. Moreover, law enforcement did not engage in repeated and insistent inquiries to compel defendant to partake in either transaction; for example, Deputy Schneider placed but one phone call to set up the first transaction.

In short, a rational jury would not conclude from the evidence that the conduct of law enforcement was likely to induce a normally law-abiding person to commit the offenses; rather, the evidence showed defendant was an opportunistic drug dealer. (*People v. Watson* (2000) 22 Cal.4th 220, 224 [no sua sponte duty to instruct on entrapment where police left an unlocked car with keys in the ignition in a parking lot; "a person who steals when given the opportunity is an opportunistic thief"].) Thus, an entrapment instruction was unwarranted.

### III. The Trial Court Properly Imposed Aggravated Sentences for Count 4 and Its Firearm Enhancement

Defendant contends the trial court erroneously imposed aggravated sentences for count 4 (offering to sell methamphetamine during the second transaction) and for being armed with a firearm during this offense. Defendant argues the trial court should have considered mitigating factors such as defendant's lack of criminal history and his drug addiction; and should not have considered defendant's lack of remorse, nor the "dangerous and sophisticated" nature of the offenses, which constituted an impermissible dual use of facts for sentencing. We disagree with both contentions.

"[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibition.… The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' " (*People v.*

10

*Sandoval* (2007) 41 Cal.4th 825, 848.) The existence of a single factor in aggravation will support imposing an upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728.) However, the court may not consider a defendant's lack of remorse or refusal to take responsibility for the offense if the defendant has denied guilt and the evidence of guilt is conflicting. (*People v. Coleman* (1969) 71 Cal.2d 1159, 1168-1169 (*Coleman*), overruled on other grounds in *Garcia v. Superior Court* (1997) 14 Cal.4th 953, 966, fn. 6; see *People v. Key* (1984) 153 Cal.App.3d 888, 900-901.) The trial court must state its reasons on the record for the sentence imposed. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(e).) A remand for resentencing is required when the trial court fails to consider relevant mitigating factors. (*People v. Strunk* (1995) 31 Cal.App.4th 265, 273-275.)

Preliminarily, defendant has forfeited his claims because he failed to object to the trial court's imposition of the aggravated sentences at the time of sentencing. (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).)

In any event, the trial court properly weighed the probation report, aggravating and mitigating factors and other evidence before imposing the upper terms on count 4 and the firearm enhancement. (§ 1170, subd. (b).) The trial court relied on two aggravating factors to support imposing the upper terms: The crime involved (1) planning and sophistication, and (2) a large quantity of methamphetamine (an amount greater than the amount that requires probation denial pursuant to section 1203.073). (*People v. Black* (2007) 41 Cal.4th 799, 813; Cal. Rules of Court, rule 4.421(a)(8), (10).) Contrary to defendant's assertions, the trial court did not consider defendant's lack of remorse in imposing an aggravated sentence. (*Coleman*, *supra*, 71 Cal.2d at p. 1169.)

The trial court stated its reasons for selecting the upper terms on count 4 and the firearm enhancement on the record. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(e).) The trial court observed that if the case had involved only the first transaction,

11

then perhaps the mitigating factors would either outweigh or equal the weight of the aggravating factors. The trial court reasoned, however, that because of the planning and participation that went into setting up the initial transaction and the subsequent transaction, which was the whole purpose of the effort, the aggravating factors substantially outweighed any mitigating factors.

It is true that defendant does not have a conviction record. However, defendant is also not someone who has no knowledge or experience with controlled substances. The probation report, too, recommended upper terms on count 4 and on the firearm enhancement notwithstanding defendant's lack of a criminal record.

Contrary to defendant's contention, the trial court did not consider the presence of a firearm as an aggravating factor for count 4. (*Scott*, *supra*, 9 Cal. 4th at p. 350.) Instead, the trial court properly used this fact to deny probation.

Finally, defendant incorrectly claims the trial court needed additional facts to impose an upper term for the firearm enhancement such as the use of the firearm or the deputies seeing the firearm prior to the search of the vehicle. First, defendant has forfeited this claim for the reason expressed above. Second, the firearm enhancement requires only that defendant be personally armed while committing the offense of offering to sell the methamphetamine (count 4; Health & Saf. Code, § 11379, subd. (a); Pen. Code, § 12022, subd. (c).) For these reasons, we conclude the trial court did not err.

### IV.  Section 654—Sentencing

Defendant contends the trial court, after imposing sentence for count 4 (offering to sell methamphetamine), erred when it failed to stay sentences on counts 1, 2, and 3 pursuant to section 654, because there was only a *single* transaction in this case. Defendant explains that counts 1, 2 and 3—i.e., the sale, possession for sale, and transportation of the smaller amount of methamphetamine—were undertaken only to set

up the larger amount offenses of counts 4 and 5 (offering to sell and possessing for sale methamphetamine). Alternatively, defendant argues that even if there were two distinct transactions, counts 2 and 3 (possessing and transporting the smaller amount of methamphetamine—i.e., the first transaction) are not distinct from count 1 (the sale of that smaller amount), and the sentences imposed on counts 2 and 3 must be stayed under section 654. We agree with defendant's alternative argument.

## A. *The Trial Court Properly Imposed Unstayed Sentences on Count 1 (sale of smaller amount—first transaction) and Count 4 (offering to sell larger amount—second transaction) as They Were Distinct Acts*

Section 654 precludes imposing multiple punishments for conduct that violates more than one criminal statute but which constitutes an indivisible course of conduct. (*People v. Perez* (1979) 23 Cal.3d 545, 551-552.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, overruled in part on other grounds by *People v. Sanders* (2012) 55 Cal.4th 731, 742.)

If a defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.) Moreover, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Ibid.*, fn. 11.) Finally, "[i]f the separation in time afforded [a] defendant[] an opportunity to reflect and renew [his] intent before committing the next crime, a new and separate crime is committed." (*People v. Louie* (2012) 203 Cal.App.4th 388, 399 (*Louie*).)

13

Whether section 654 "applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the [judgment] and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Substantial evidence supports the trial court's section 654 conclusion that the initial sale of the "eight ball" (i.e., the eighth of an ounce) at Lorenzo's Market in Winters (count 1), and the offer to sell, several hours later, one pound of methamphetamine at Carl's Jr. in Williams (count 4), did not comprise a single transaction.

After the first transaction, defendant had several hours to reflect and renew his intent regarding the second transaction. (*Louie*, *supra*, 203 Cal.App.4th at p. 399.) The two transactions were related, but separate transactions, divisible by time, location, intent to engage in two separate transactions, and the amount of methamphetamine that was for sale. Thus, the sentence imposed on count 4 (offering to sell the larger amount of methamphetamine) does not require that the sentence imposed on count 1 (selling the smaller amount of methamphetamine) be stayed under section 654.

### B. The Trial Court, However, Should Have Stayed Sentences on Counts 2 and 3 Pursuant to Section 654

Alternatively, defendant argues that even if counts 1 and 4 (selling the smaller amount, and offering to sell the larger amount) are distinct transactions, counts 2 and 3 (possessing and transporting the smaller amount) are part of the same event, count 1 (selling the smaller amount). We agree.

A line of decisions has held that possessing a controlled substance for sale and transporting that substance for sale do not constitute different acts with different objectives from the sale of that substance. (*People v. Avalos* (1996) 47 Cal.App.4th

14

1569, 1582-1583; see *People v. Lopez* (1992) 11 Cal.App.4th 844, 849-850; *People v. Thomas* (1991) 231 Cal.App.3d 299, 306-307.)

Here, the People correctly concede that the concurrent sentences imposed on counts 2 and 3—possessing and transporting the smaller amount of methamphetamine—should have been stayed under section 654, given the sentence imposed on count 1 (the sale of that smaller amount). Moreover, the trial court made a factual finding that counts 2 and 3 were part of the smaller amount transaction (i.e., the first transaction). Thus, while the trial court correctly imposed concurrent sentences on counts 2 and 3, it incorrectly failed to stay those sentences under section 654. A concurrent sentence is still punishment. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468, 1472.) Therefore, the trial court erred; the sentences for counts 2 and 3 should have been stayed.

## V.  The Abstract of Judgment Must Be Corrected to Reflect the Actual Sentence Imposed for Counts 1 and 4

The trial court imposed the upper term of four years on count 4 (offering to sell the larger amount of methamphetamine) and one-third the middle term of three years (i.e., one year) on count 1 (selling the smaller amount of methamphetamine). However, the abstract of judgment incorrectly states that the trial court imposed the upper term of four years on count 1 and a concurrent term of three years on count 4. The abstract of judgment must be corrected to reflect the actual sentence imposed with regard to counts 1 and 4 during the oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The judgment is modified to reflect that the sentences on counts 2 and 3 are stayed pursuant to section 654. As modified, the judgment is affirmed. The trial court is directed to correct the abstract of judgment as specified in part V., *ante*, to amend the abstract of judgment to reflect the change in the judgment, and to forward a certified copy

15

of the corrected and amended abstract to the Department of Corrections and Rehabilitation.


      BUTZ      , J.

We concur:


     NICHOLSON    , Acting P. J.


     DUARTE     , J.

16