Filed 7/13/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID P. COLLOM,<br><br>        Defendant and Appellant. | A155688<br><br>(City & County of San Francisco<br>Super. Ct. No. SCN228406) |

A jury convicted David Collom of multiple counts for meeting a minor for lewd purposes (Pen. Code, § 288.4, subd. (b))[1], sending harmful matter to a minor (§ 313.1, subdivision (a)), and arranging a meeting with a minor for lewd purposes (§ 288.4, subd. (a)(1)).

On appeal, Collom contends there was no substantial evidence for his convictions under section 313.1, subdivision (a) (section 313.1(a)) which he says can be violated only when harmful matter is transmitted to a minor, and not when, as here, it is transmitted to an adult posing as a minor. He argues

---

*\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the portions beginning with "On October 13, 2017, after Collom passed along" on page 3 through "Yeah you're only 14 but you're hot baby[.]" on page 6; beginning with the heading "Defense Case" on page 8 through "There was also a google search for '16 year old girls that live in Stockton want to have sex.'" on page 10; and Section B. with the heading "Instructional Error" and Section C. with the heading "Minute Order and Abstract of Judgment" in the Discussion portion of the opinion.*

[1] All statutory references are to the Penal Code.

1

the trial court prejudicially erred in failing to instruct the jury sua sponte that his mistaken belief as to the purported minor's age, even if unreasonable, was a complete defense.  He also says the clerk's minute order and abstract of judgment must be amended to properly reflect his sentence.

In the published portion of this opinion, we reverse the misdemeanor convictions under section 313.1(a).  In the unpublished portion, we correct the trial court's sentencing minute order and abstract of judgment to properly reflect the imposed sentence.  Otherwise, we affirm.

## BACKGROUND

An amended information charged Collom with one count of meeting a minor for lewd purposes (§ 288.4, subd. (b), count 1), four counts of sending harmful matter to a minor (§ 288.2, subd. (a)(2), counts 2, 3, 4, and 5), and three counts of arranging a meeting with a minor for lewd purposes (§ 288.4, subd. (a)(1), counts 6, 7, and 8).  The jury trial revealed the following.

### Prosecution Case

The social network Skout.com (Skout) provides users a platform where they can register, create profiles, and meet other users nearby with whom they can chat or post online messages.  Users who are 13 to 17 years old are placed in Skout's teenage community, while those 18 and older are placed in the adult community.

In July 2017, San Francisco Police Department Sergeant Christopher Servat, a Special Victims Unit officer assigned to the Internet Crimes Against Children subunit, was working an undercover operation to investigate individuals exploiting children online.  He created a fictitious profile on Skout for "Briana."  Servat gave Briana a birthday that stated she was 18 years old and put her in Skout's adult community.  He included this greeting: "Hey, looking for cool, chill people . . . I am not 18.  I am in high

2

school."  For Briana's profile pictures, Servat used two photographs given to him by Sergeant Kathryn Bartel taken when she was 12 and 14 years old.

In October 2017, Collom contacted Briana with the message "Hello, gorgeous."  Collom's profile indicated he was 57 years old and from Stockton. Days later, Servat, posing as Briana, responded and the two began communicating.  Collom messaged, "I find you very attractive and very beautiful and gorgeous.  Oh, and sexy.  I would love to get to know you more, if you don't mind."  He gave Briana his cell phone number with the comment, "Give me a call so we can have . . . a little bit of conversations in a private matter—or a private conversation.  This site is too wild."

A few days later, Servat, continuing to pose as Briana, sent Collom a message on Skout and asked his age.  He responded, "Does age really matter to you?"  Servat answered, "No.  I like older guys.  I'm 14."  Collom replied, "Oh, that's wonderful, sweetheart.  I hope your parents do not know what you are doing because you are not even supposed to be on this dating site, but you are a grown woman to me any way.  [¶]  Is there any chance we can get away, and a have fun in Frisco because I really want to know you even better.  Like I said, you are gorgeous.  [¶]  Get back to me soon, sweety."

Soon they began communicating outside of Skout.  Servat used a phone designated for the undercover operation and estimated the two exchanged "probably thousands" of texts between October 2017 and November 2017.  He described the "entirety of the conversation [as] very sexual."  The following are excerpts from some of their exchanges which were the bases for the criminal charges against Collom and which bear on issues in this appeal.

On October 13, 2017, after Collom passed along a few photographs of himself, Servat sent Collom a picture of Bartel at 14 years old.  In response,

3

Collom texted: "Wow you're hot baby [¶] So how's school going [¶] They fresh men in high school that would be like what ninth grade[.]"

On October 14, 2017, Collom texted, "You go to school I go to work make money you go to care to learn to make more money [¶] Now I suppose I'm your sugar daddy[.]" They discussed relationships, sexual experiences, and their eagerness to get to know each other better. Servat mentioned Briana's mother worked afternoons and evenings and that her father lived elsewhere. Collom added, "I'll be your sugar daddy and your daddy." He wanted Briana to save pictures he sent her and advised her to lock her phone so her mother could not see them. He added, "You seem very mature for your age . . . like your 20-something."

On October 15, 2017, Collom texted, "Well, I was hoping you were awake but anyway imma give you a special could no disrespect intended but you're probably imagining and had to guess my age noo, baby be honest with what you desire that and have it inside you slow an easy until you can accept it all hang I would show you love like you never had it before sweetheart you are a fantasy come true and I'm your sugar daddy[.]" He attached a photo of an erect penis. He continued, "[W]ould you enjoy having sex with me and did you ever guess my age you are my fantasy and you are so fucking gorgeous." Servat replied, "Do you remember my age?" Collom answered, "Really yeah 14 on your profile says you're 17 so you did not tell the truth shame on you [¶] But you seem so mature and know exactly what you want . . . ." Servat wrote, "I put 17 on profile so I can chat with people [¶] But I'm telling u the truth because I like and trust u, I'm 14[.]" Collom replied, "Really well I'm glad we got to know each other got connected . . ."

On October 16, 2017, they exchanged more texts. At some point, Collom asked, "[W]hat are you doing texting me when you're supposed to be

4

in school[?].  Servat responded, "I'm being careful, I hide my phone from my teacher[.]"  Collom responded, "Good girl[.]"  Later, Servat texted Collom a photo of Sergeant Bartel at age 14.  Collom reacted, "[D]amn baby you're sexy you look older than 14 but like I said you look very sexy and vantastic . . . ."  Servat replied, "Thanks baby [¶] But yes I'm 14."  Collom returned, "You're very welcome and I believe you I'm just saying you look older than 14 but I love every inch of you."

Between the evening of October 26 and the early morning of October 27, 2017, they exchanged another round of texts.  Collom asked, "[A]re you busy this Sunday[?]"  Servat answered, "Yea doin stuff with family [¶] I mostly am free after school [¶] Cuz that's when my mom works[.]"  Collom asked, "So is there any way we can get together on a weekend when you're not doing family stuff cuz I really want to meet you and get to know you and hold you and kiss you[.]"  Shortly after midnight, Collom added, "Goodnight baby I hope you have a great day tomorrow thinking about you can't wait to eat your pussy [¶] Cuz I can't help it but I love you and I can't wait to fuck you and make love to you I hope you can understand I desire you and I miss you so much[.]"  This text was followed by the same photo of an erect penis he sent on October 15.

On October 29, 2017, Collom texted Briana, "Good morning sweetheart you're so beautiful I love you with all my heart."  He included a photo of an adult man with an erect penis.  After the two professed their love for each other, Collom texted, "I just remember we need to keep everything a secret we don't want mama to find out."  Later, Servat texted, "When do u want to see me[?]"  Collom answered, "I would love to see you on the weekend but I know you're always with your mother and family [¶] Because me trying to get down to the Bay Area on a weekday is going to be almost totally impossible

5

and it's going to take me hours to get there and hours to come back to go to work the next day[.]"

They made plans to meet later that week or early the following week. Servat noted, "[I]f Friday doesn't work, next Monday is good for me because I don't have school." Collom replied, "Okay either way we're going to do it now I'm going to eat your pussy and I'm going to come inside you and don't worry if you can't have kids I can't have kids anymore so it's going to feel great [¶] It would be great if I can get Monday off but I can't I can't miss no more time at work cuz I'm already in trouble but if I could we could have the whole day." Servat wrote, "I know that's why Monday would be better[.]" Collom texted, "Alright then Monday it is." Servat added, "I don't want kids right now, I'm only 14 years old lol[.]" Collom explained, "No I'm saying you can't have kids with me cuz I don't I'm negative I had my tubes tied years ago so I come inside you you won't get pregnant my sperm is negative [¶] Yeah you're only 14 but you're hot baby[.]"

Over the next several days, the two exchanged messages in anticipation of Collom's visit. Servat told Collom that Briana lived in San Francisco. On November 1, 2017, Collom wrote, "Yes baby I know you truly want to meet me and fuck me and make love to me . . . . I will do my damndest to try to show up there Monday after work but it's going to be late when I get there . . . ." He said he would leave Stockton after work at 4:30 p.m. and would then drive the two hours to San Francisco. Collom sent the photo of an erect penis he previously sent and added, "I truly believe my baby girl really wants to feel this inside her and I will one love to give it to her and show her how much she means to me I love you baby . . . ." Servat texted Collom a San Francisco street address. After discussing what they planned to do when they met, Servat asked, "How long can u stay on Monday[?]" Collom queried,

6

"When is your mom coming home [¶] Stay as long as I can before your mom comes home[.]" Servat texted, "Love you." When Collom received it later, he responded, "Well I just got your message sweetheart and I must say you are the best and I know you love me and I know you want everything I said I just wish it to hear from your own words I have to tell you you're very mature for your age you would say your 14 but you act like you're 18 but I'm cool with that . . . . yeah you are my girlfriend and my daughter oh my god I've died and went to heaven[.]" Collom sent two photos of couples having sex.

On November 4, 2017, Collom texted, "Well hello sexy no I love you and I'm in love with you Brianna and I hope you real and I hope your true I always wanted a relationship like this . . . ."

On November 5, 2017, the day before Collom's planned visit, they exchanged dozens more texts. Servat wrote, "I can't [wait] for you to hold me tomorrow [¶] and to kiss you. . . ." He added a photo of a 15-year-old Bartel in pigtails. Later, Collom asked Briana to call. Servat responded, "I can call u tomorrow during school if that's ok [¶] . . . [¶] I can either duck out of class and call u or call u at my lunch[.]" At some point, Servat texted, "I want to be your girl forever[.]" Collom replied, "And you will baby and hopefully when you get older you can come to live with me[.]" Servat responded, "I would love that [¶] But not for four years . . . [.]" Collom asked, "Why 4 years baby you can leave home at 17 or 16 you're old enough legally . . . [¶] . . . [I]f you're 16 or 17 [] the law is really not going to force you go back home or anything like that [¶] Yeah but when you're at your age now and younger yeah they have a say so but still a lot of people run away from home and never go back. . . ." When they resumed texting that day, Collom inquired, "May I ask what grade you are in and when is your birthday month day and year." Servat answered, "Ok love [¶] I'm in 9th grade[.]" Collom replied, "Oh your

7

freshman [¶] I love . . . your first year in high school that's the hardest[.]" Servat added, "Bday is June 10th 2003."

At 2:32 a.m. on November 6, 2017, their planned meeting day, Collom sent Briana the same erect penis photo he sent previously. Around 11:00 a.m., they talked on the phone. A female officer posed as Briana and confirmed Collom's visit. They arranged to meet.

Around 4:30 p.m., Servat texted, "On your way love?" Collom responded that he was already in San Francisco. Servat drove out to the address he gave to Collom. A while later, Collom texted Briana that he was around the block from her house. Servat saw Collom in his parked car nearby. Collom was arrested and taken into custody. Officers searched Collom's car and seized a phone and a condom on the passenger seat. Servat confirmed the phone was Collom's. The seized phone contained the number of Servat's undercover phone with the label "Briana 14," and recent text messages on it matched those Servat had sent to Collom.

## Defense Case

Collom testified he set up a Skout profile to meet women between the ages of 18 and 45, not to date minors. When he registered, he had no idea that minors were allowed on the site and he never had any previous online encounters with minors on dating sites. He also believed Skout required users to be 18 or older and somehow verified their ages. Through a matchmaking feature, Skout suggested Collom's potential match with Briana.

Collom believed Briana was 18 years old. Her profile said she was 18. Based on her profile pictures, she looked 18. Also, "[t]he way she actually engaged herself in the conversation texting to me was a lot more mature than a 14 year old." When Briana told him she was 14, he "figured she [was]

8

playing with [him] or teasing [him] or playing some kind of role play or something." His text to her that stated "I am cool with what you got going on. No problem" meant he understood Briana was older, wanted to role play, and accepted it.

He acknowledged that he fantasized about a woman pretending to be younger and that he pretended to be her "daddy." He described it as "[j]ust like fantasizing like I am her daddy, and that's my daughter or something like that." He was attracted to adult women acting like teenagers. He had engaged in this type of fantasy role play with his second wife, who always called him "daddy." He had also engaged in such role play with other women he met online, including on Skout. In those chats, which were submitted as exhibits, a user whose profile indicated she was 31 years old referred to him as "daddy" and he referred to himself as "daddy." In another exchange, a woman whose profile indicated she was 39 years old, told him she was "into older m[e]n who ha[ve] a fetish with incest little girl," to which he responded, "Daddy is waiting." In his mind, he was engaged in a similar "daddy-daughter" role play with Briana. While they never openly discussed their role play, they had veiled discussions about it.

The first time he realized Briana must actually be 14 years old was when he was arrested. Had he met with her and discovered she was only 14, he never would have had sex with her.

Dr. Elisabeth Sheff-Stefanik testified on Collom's behalf as an expert on sexuality and particularly unconventional sexual relationships. One of the unconventional relationships she discussed was age play in which one person pretends to be younger than they are while the other person retains their chronological age. She explained, "It's a very common sexual fantasy to imagine oneself especially as younger."

9

A common form of age play is parent-child role play, which involves a power exchange where the older figure is endowed with authority. Daddy-daughter role play can reflect that authority dynamic but is not always construed as incest. In such scenarios, the player in the younger role will often add details about parental disapproval or concern to make the fantasy more real. In online interaction, people will sometimes slip into role play without advance discussion.

Many people begin exploring their sexual fantasies online because it is the easiest place to obtain information and explore aspects of their sexual identity that were previously unexplored in real life. Plus, if someone makes a mistake online, the consequences are not as significant as in real life because he or she can simply disengage.

### Rebuttal

In rebuttal, Servat provided details about the contents of Collom's seized phone. Another officer had processed the phone and generated an "extraction report" which summarized information found on it, including the websites visited. Of the thousands of web searches in the report and texts and photos, Servat flagged certain ones. One was called "nude teenagers in bed together." Other sites visited were called "16 Year Old Naked," "Fucking 14," "I'm a young girl attracted to older men relationship advice," "Do older men find 13 to 17 year old girls attractive," and "13 year old having sex with older men, family education." There was also a google search for "16 year old girls that live in Stockton want to have sex."

### Jury Verdict

The jury returned a mix of verdicts. Collom was found guilty on count 1 of meeting a minor for lewd purposes in violation of section 288.4 subd. (b), on counts 2 and 3 for sending harmful matter to a minor in violation of

section 288.2, subdivision (a)(2), and on count 6 for arranging a meeting with a minor for lewd purposes in violation of section 288.4, subdivision (a)(1). On counts 4 and 5, the jury rejected the greater charge of sending to a minor matter depicting minors engaged in sexual conduct under section 288.2, subdivision (a)(2), but found him guilty of section 313.1(a), a misdemeanor, as a lesser included offense. Collom was found not guilty of count 7 (arranging a meeting with a minor for lewd purposes) and count 8 (attempting to arrange such a meeting). Collom appeals.

## DISCUSSION

### A. Sufficiency of the Evidence (Counts 4 and 5)

Collom argues the evidence was insufficient to support his misdemeanor convictions under section 313.1(a) as a matter of law.

When sufficiency of the evidence is challenged, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 562.) If there is substantial evidence to support the verdict, "we must accord due deference to the trier of fact." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) As such, we will not "reweigh any of the evidence" and we will "draw all reasonable inferences, and resolve all conflicts, in favor of the judgment." (*People v. Poe* (1999) 74 Cal.App.4th 826, 830.)

Section 313.1(a) states: "Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly sells, rents, distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but

11

not limited to, live or recorded telephone messages, any harmful matter to the minor shall be punished . . . ." (§ 313.1, subd. (a).)

Collom contends section 313.1 can only apply to conduct involving an actual minor, and because his convictions were premised upon his communication with an adult police officer posing as a minor, he could not have violated section 313.1(a). The People counter that section 313.1(a) "does not require that the intended recipient of the harmful matter be an actual minor as long as a defendant knows or believes that the other person was a minor." The parties have cited no case, nor have we found any, that directly addresses whether section 313.1(a) is violated when the recipient of the harmful matter is not a minor.

Thus, Collom raises an issue of statutory interpretation. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

The elements of a section 313.1(a) misdemeanor are "(1) distribution 'by any means,' (2) of 'any harmful matter,' (3) *to a minor* and (4) with knowledge that the person is a minor or with a lack of reasonable care in ascertaining the minor's true age." (*People v. Jensen* (2003) 114 Cal.App.4th 224, 244 (*Jensen*), italics added.) Under its plain meaning, the statute is violated only where harmful matter has been distributed to a minor, not an adult posing as one. It is undisputed that Servat, an adult police officer, posed as 14-year-old Briana. Thus, Collom's offensive texts and pictures were never sent to a minor and his misdemeanor convictions under section 313.1(a) cannot stand.

12

Many sex offenses can be committed when defendants "believe" their target victims are minors. For example, section 288.2, subdivision (a) states, "Every person who knows, should have known*, or believes that another person is a minor*, and who knowingly distributes . . . any harmful matter . . . is guilty of a misdemeanor. . . . " (§ 288.2, subd. (a), italics added.) Section 288.4 also contains similar qualifying language: "Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she *believes to be a minor* for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior, shall be punished . . . ." (§ 288.4, subd. (a)(1), italics added.) These statutes clearly provide culpability for defendants who believe they are interacting with minor victims. Section 313.1(a) contains no similar language that would allow Collom to be found guilty if he believed Briana was a minor, and instead she turned out to be fictitious or an adult posing as a minor.

We are not persuaded by the People's argument that no actual minor is necessary for a conviction under section 313.1(a). Relying on *Jensen*, *supra*, 114 Cal.App.4th 1224, the People state, "Case law establishes that section 313.1 is a lesser included offense of section 288.2, in that it criminalizes exhibiting harmful matter to a minor, but does not require the prosecution to establish the defendant's specific lewd intent as required for a conviction under section 288.2."[2] Based on this syllogism, the People contend that

---

[2] The People also rely on *People v. Nakai* (2010) 183 Cal.App.4th 499 (*Nakai*), to support this position. But *Nakai* reached no such conclusion. (*Id.* at p. 507 ["For purposes of this opinion, we will assume without deciding that section 313.1, subdivision (a) constitutes a necessarily included offense of section 288.2, subdivision (a)."].)

13

because section 288.2 allows a conviction based on "a reasonable belief" the victim was a minor, so must section 313.1(a), its purported lesser included offense. (See *Jensen*, *supra*, 114 Cal.App.4th at p. 243 ["A lesser offense is necessarily included in a greater offense if . . . the statutory elements of the greater offense . . . include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' "].)

But when it identified section 313(a) as a lesser included offense of section 288.2, *Jensen* was comparing section 313.1(a) to an earlier version of section 288.2, *subdivision (b)* which had similar language. That earlier version stated: "Every person who, with knowledge that a person is a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by electronic mail, the Internet . . . or a commercial online service, any harmful matter, as defined in section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent, or for the purpose of seducing a minor, is guilty of a public offense . . . ." (Former § 288.2, subd. (b) [effective through Sept. 11, 2011].) *Jensen* did not determine, and is not authority for the proposition, that section 313.1(a) is a lesser included offense of section 288.2, *subdivision (a)*, as currently drafted. Collom was charged and tried under the current version of section 288.2, subdivision (a), as amended in 2014 to criminalize behavior by a defendant "*who believes that another person was a minor*." (Stats.2013, c. 777 (S.B.145), § 2.) There was no similar amendment enacted for section 313.1(a), and under the statutory elements test it is no longer a lesser included offense of section 288.2, subdivision (a).

Section 313.1(a) is also materially different from other sex offenses which expressly include "attempt" within the statutory definition of the

14

crime. For instance, section 288.3, subdivision (a) provides, "Every person who contacts or communicates with a minor, or *attempts to contact or communicate with a minor*, who knows or reasonably should know that the person is a minor, with intent to commit [a specified] offense . . . involving the minor shall be punished . . . ." (§ 288.3, subd. (a), italics added.) Such "attempt" language makes plain that the lack of an actual minor is not a defense to an attempt to commit a sex offense against a minor. (*People v. Korwin* (2019) 36 Cal.App.5th 682, 689.)

In addition, Collom was not charged with *attempting* to violate section 313.1(a), or section 288.2, subdivision (a), the original charge brought against him. The fact that Collom's intended victim was a fictitious person or a police officer posing as a minor does not mean he was innocent of a crime. Rather, had attempt been charged and the jury so instructed, Collom could have been found guilty of attempts to violate section 313.1(a). *Hatch v. Superior Court (*2000) 80 Cal.App.4th 170 is instructive. There, the court rejected the defendant's argument that a necessary element of the charges under section 288.2, subdivision (a) was proof that the victims were minors. (*Id.* at p. 185.)[3] Because the crime was charged as an attempt, "[th]e fact the prosecution cannot show that Hatch's intended victims were in fact under 14 years of age [was] irrelevant to his culpability for attempting the charged crimes." (*Ibid.*) Thus, although Hatch's intended victims were not in fact under the threshold age and not even real people, he could still be guilty of *attemping* to violate 288.2 subdivision (a). Collom was not charged with attempts. He was charged with violating section 288.2, subdivision (a) and convicted of violating the purportedly lesser included offense of section 313.1(a). But

---

[3] Hatch was prosecuted under the earlier version of section 288.2, subdivision (a).

section 313.1(a) is no longer a lesser included offense of section 288.2, subdivision (a), and the absence of a minor victim means Collom did not violate it.

Had the Legislature intended to punish defendants who *attempt* to distribute harmful matter to minors or individuals *they believe to be minors*, it could clearly so state in section 313.1(a) like it has in sections 288.2 and 288.3.  The prerogative rests with the Legislature to define crimes, and "[i]t is up to the Legislature to implement any change that may be desirable." (*People v. Nguyen* (2000) 24 Cal.4th 756, 763-764.)

Finally, in some circumstances, appellate courts can reduce convictions for a crime to a lesser included offense, such as attempt, when the evidence has not proven the completed crime.  (See § 1181, subd. (6).)  We will not do so here.  The People make no argument that section 1181 will authorize this result, and as explained, section 313.1(a) is not a lesser included offense of section 288.2.  For this court to convict Collom of attempts to violate section 313.1(a) would be too attenuated in the circumstances in the absence of a charge or instruction.  (See *People v. Bailey* (2012) 54 Cal.4th 740, 753 [law of attempt is complex and intricate, not subject to generalization];  *People v. Strunk* (1995) 31 Cal.App.4th 265, 271 [trial court must instruct on lesser included offenses and attempts when warranted by the evidence].)

## B.  Instructional Error

Collom also argues that his remaining convictions must all be reversed because the trial court's instruction on mistake of fact improperly required that his mistaken belief about Briana's age had to be objectively reasonable. He argues the court should have instead instructed the jury sua sponte that the mistake of fact defense required his acquittal if he actually believed

16

Briana was 18 or older, no matter how unreasonable that belief may have been.

"We review instructional error claims de novo." (*In re Loza* (2018) 27 Cal.App.5th 797, 800.)

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) "In the case of defenses, . . . a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*Id.* at p. 157.) However, when there is evidence to support the instruction, the trial court should not measure its substantiality by weighing witness credibility and should resolve any doubts as to sufficiency in favor of the defendant. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145 (*Barnett*); see also *People v. Cole* (2007) 156 Cal.App.4th 452, 484 [" 'The threshold is not high.' "].)

A mistake of fact defense differs based on whether the charged crime requires general intent, specific intent or knowledge of a requisite fact. For crimes requiring a general criminal intent, the defendant's mistaken belief must be reasonable. For specific intent crimes, or crimes that include the defendant's knowledge as an element, a defendant's unreasonable mistaken belief is a defense so long as it is in good faith. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1425-1427 (*Russell*), disapproved on another ground in *People v. Covarrubias* (2016) 1 Cal.5th 838, 874, fn. 14.)

17

The People do not dispute Collom's contention that his remaining convictions were for specific intent crimes. Section 288.2, subdivision (a)(2) (counts 2 and 3) makes it a crime to send harmful matter to a minor with the intent or purpose of seducing the minor. (§ 288.2, subd. (a)(2).) Section 288.4, subdivision (a)(1) (count 6) makes it a crime for a person to arrange a meeting with a minor or a person he believes to be a minor for the purpose of engaging in lewd or lascivious behavior. (§ 288.4, subd. (a)(1).) Section 288.4, subdivision (b) (count 1) makes it a crime for the person to go to an arranged meeting place at or near the arranged time to meet with the minor. (§ 288.4, subd. (b).) Each of these crimes appear to require a defendant's specific intent to seduce a minor by sending harmful materials or intent to engage in lewd or lascivious conduct with a minor by arranging a meeting. Thus, Collom's mistaken belief regarding Briana's age could be a defense to the crimes, even if it was unreasonable. (See *Russell*, *supra*, 144 Cal.App.4th at pp. 1425-1427.)

But the trial court gave the following mistake-of-fact instruction: "The defendant is not guilty of all of the crimes charged in Counts 1 through 8, and the lesser included offenses, if he *reasonably* and actually believed that the other person was 18 or older. In order for *reasonable* and actual belief to excuse the defendant's behavior, there must be evidence tending to show that he *reasonably* and actually believed that the other person was age 18 or older. [¶] If you have a reasonable doubt about whether the defendant *reasonably* and actually believed that the other person was age 18 or older, you must find him not guilty of Counts 1 through 8 and the lesser included offenses." (Italics added.)

Collom makes no claim that he objected to this instruction or requested the court to omit the qualification that his mistaken belief had to be

18

reasonable. Even so, we agree that there was enough evidence Collom actually believed Briana was an adult to trigger the court's sua sponte duty to modify its instruction. (See *Breverman, supra*, 19 Cal.4th at p. 154.) Collom testified repeatedly that he believed Briana was an adult and the two were engaged in age-based role play. Moreover, he met Briana in the adult community of a social network site which he believed verified users' ages, and Briana's profile indicated she was 18 years old. Without assessing Collom's credibility and resolving doubts as to the sufficiency of the evidence in his favor (*Barnett, supra*, 17 Cal.4th at p. 1145), the jury should not have been instructed that any mistaken belief he had about Briana's age must have been reasonable.

We next consider whether the trial court's instructional error was prejudicial. The parties dispute the harmless error standard we must apply. Collom argues the instruction violated his constitutional rights by lessening the prosecution's burden of proof and must be reviewed under the standard articulated in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). Under *Chapman*, an error is reversible unless the reviewing court can say, beyond a reasonable doubt, the error did not contribute to the conviction. (*Id.* at p. 24.) The People argue instructional error should be reviewed under the less stringent harmless error standard in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).) Under *Watson*, the error is prejudicial unless the reviewing court can say there is no reasonable probability the jury would have reached a more favorable verdict if the instruction had been properly given. (*Id.* at p. 836.) We need not decide which standard to apply in this case because the error is harmless under even the *Chapman* standard. There is no way the error in the instructions contributed to Collom's convictions.

19

The evidence that Collom really believed Briana was 14 years old was plentiful and compelling. Even though Briana's profile appeared in Skout's adult community, Servat told Collom when he began chatting as Briana, "I am not 18." Servat repeatedly told Collom that Briana was 14 years old. When Collom asked about Briana's birthday, Servat said she was born in 2003, which made her 14 years old at the time. Servat emphasized Briana's age by explaining she was a high school freshman living with her mother. And except for one, all of the photos sent to Collom that purported to be Briana depicted a girl between 12 and 15 years old.

Moreover, Collom's conduct revealed his belief that Briana was 14 years old. While he commented repeatedly that he found Briana mature, he never disputed she was 14 and acknowledged her age multiple times. Collom's texts reflected he understood Briana was a high school freshman, and certainly not 18 or older. Other actions also showed he knew he was engaging with a 14-year-old. When he and Servat first began texting, Collom suggested Briana lock her phone so her mother could not see his messages. Despite great difficulty, he made it a point to travel two hours to visit Briana on a weekday during a window in time when her mother was supposed to be working and she could be avoided. The content and browsing history of Collom's cell phone also corroborated his interest in minor girls. This was more than sufficient evidence to support the jury's guilty verdicts.

Most of the evidence Collom relied on for his defense that he believed Briana was an adult engaged in age-based role play was not convincing. Collom suggested that his exchange with Briana when they discussed the discrepancy between her age on her Skout profile and her stated age to him set up their game. At the time he responded, "I am cool with what you got going on. No problem." But this statement is too ambiguous to warrant the

20

meaning ascribed by Collom.  Given his other testimony, it is equally if not more probable the jury would have viewed this statement as Collom's acceptance of her minority age, or his enthusiasm over a 14-year-old who would lie about her age to meet older men like him.  More telling was the fact that Servat and Collom exchanged hundreds, possibly over a thousand texts, and not a single one ever discussed role play.

Collom's evidence that he had engaged in age-based role play before to suggest his experience with Briana was simply more of the same was also not persuasive.  Simply being called "daddy" by an ex-wife, referring to himself as "daddy," or engaging in fantasy talk with a woman who admitted to being an adult, was not akin to the highly sexualized exchanges between Collom and a girl he met online who said she was 14 years old in every direct communication with him.

Thus, we can conclude beyond a reasonable doubt that any instructional error did not contribute to Collom's convictions.  The evidence that Collom actually believed Briana was 14 years old, and not an adult playing a 14-year-old, was too strong.

### C.  Minute Order and Abstract of Judgment

At sentencing for counts 2 and 3 under section 288.2, subdivision (a)(2), the trial court found Collom entertained a single criminal intent to seduce a person he believed was a minor and both counts were part of an indivisible course of conduct.  Thus, the court applied section 654.  Under that provision, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654.)  When section 654 applies, the proper procedure is to pronounce the sentence and then stay

21

it.  (*People v. Jones* (2012) 54 Cal.4th 350, 353.)  The court imposed a two-year term on count 3 to run concurrent to the sentences imposed on counts 1 and 2, and then stayed the sentence on count 3 pursuant to section 654.  The clerk's minute order and abstract of judgment do not show the sentence on count 3 was stayed.  Collom says it should be amended.

On count 6 the court sentenced Collom to six months in county jail for violation of section 288.4, subdivision (a)(1).  The minute order, however, indicates a term of "365 days" for this conviction.  Collom contends the minute order does not reflect the six-month jail term imposed on count 6 and should also be amended.

On both points, the People agree, and so do we.  (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [where a discrepancy exists between oral pronouncement of judgment and a minute order or abstract of judgment, the oral pronouncement controls].)  Accordingly, the October 19, 2018 clerk's minute order and the abstract of judgment shall be amended to reflect the sentence for count 3 is stayed pursuant to section 654 and the jail term imposed on Count 6 is six months.[4]

## DISPOSITION

We reverse the misdemeanor convictions under section 313(a) (counts 4 and 5).  In addition, the trial court is ordered to correct the October 19, 2018 sentencing minute order and the abstract of judgment to indicate Collom's sentence on count 3 is stayed and his sentence on count 6 is six months.  In all other respects, the judgment is affirmed.

---

[4] Collom also contends the sentences for his count 4 and 5 misdemeanor convictions need to be corrected.  In light of our reversal of these convictions, we need not amend or address his sentences under those counts.

22

The trial court shall prepare a corrected and amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

_____
                                        Siggins, P.J.


WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*People v. Collom*, A155688

Trial Court:                                    City &  County of San Francisco Superior
                                                Court


Trial Judge:                                    Hon. Christopher C. Hite


Counsel:


Cynthia Diane Jones, First District Appellate Court under appointment of the Court of
Appeal for Appellant.


Xavier Becerra, Attorney General, Lance A. Winters, Chief Assistant Attorney General,
Jeffrey M. Laurence, Senior Assistant Attorney General, Bruce Ortega, Deputy Attorney
General, Julia Y. Je, Deputy Attorney General for Respondent.